UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA SOBOLESKI, on behalf of herself and others similarly situated,

      Plaintiff,

v.

TERRASCEND CORP.,

      Defendant.

Case No.: 4:25-cv-11763-FKB-DRG
District Judge F. Kay Behm
Mag. Judge David R. Grand

# DEFENDANT TERRASCEND CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ............................................................. 1

II. LEGAL STANDARD ........................................................................................ 3

III. ARGUMENT: PLAINTIFF'S TCPA CLAIM FAILS
    BECAUSE SHE NEVER RECEIVED A TELEPHONE CALL.......................... 3

    A. Section 227(c) and Its Implementing Regulations Do
       Not Create a Private Right of Action for Text Messages........................ 4

    B. Any FCC Ruling to the Contrary Is Invalid. ............................................ 8

IV. CONCLUSION................................................................................................ 11

i

## TABLE OF AUTHORITIES

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*,
 885 F.3d 687 (D.C. Cir. 2018) .................................................................................. 10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................... 3

*Barber v. Charter T'ship of Springfield*,
 31 F.4th 382, 386 (6th Cir. 2022) ............................................................................... 3

*Davis v. CVS Pharmacy, Inc.*,
 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025) .................................................... passim

*Engler v. Arnold*,
 862 F.3d 571 (6th Cir. 2017) ...................................................................................... 3

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*,
 127 F.4th 303 (11th Cir. 2025) ................................................................................... 9

*Jones v. Blackstone Med. Servs., LLC*,
 2025 WL 2042764 (C.D. Ill. July 21, 2025) ....................................................... passim

*Loper Bright Enterprises v. Raimondo*,
 603 U.S. 369 (2024) ......................................................................................... 2, 9, 11

*McLaughlin Chiropractic Associates. v. McKesson Corporation*,
 606 U.S. 146 (2025) ..................................................................................... 2, 9, 10, 11

*Perrin v. United States*,
 444 U.S. 37 (1979) ..................................................................................................... 4

*Soboleski v. Clutch, Inc.*,
 No. 2:25-cv-11698- BRM-DRG (E.D. Mich. June 5, 2025) ...................................... 1

*Soboleski v. Crumble LLC*,
 No. 5:25-cv-11839-JEL-DRG (E.D. Mich. June 19, 2025) ....................................... 1

*Soboleski v. Dispo Holdings LLC*,
 No. 2:25-cv-11856-LVP-DRG (E.D., Mich. June 20, 2025) ..................................... 1

*Soboleski v. Extended Stay America, Inc.*,
 No. 3:25-cv-00526-KDB-SCR (W.D.N.C. July 18, 2025) ......................................... 1

*Soboleski v. Luminess Direct LLC*,
  No. 2:24-cv-13397-LJM- KGA (E.D. Mich. Dec. 18, 2024) ........................................ 1

*Soboleski v. MCM Products USA Inc.*,
  No. 2:25-cv-11699 (E.D. Mich. June 8, 2025) ............................................................ 1

*Soboleski v. Michael Kors (USA), Inc.*,
  No. 2:25-cv-11838-DPH-CI (E.D. Mich. June 19, 2025) ............................................ 1

*Soboleski v. Party Pizza Roseville, Inc.*,
  No. 2:24-cv-13138-MFL-CI (E.D. Mich. Jan. 15, 2025) .............................................. 1

*Tomaszczuk v. Whitaker*,
  909 F.3d 159 (6th Cir. 2018) ....................................................................................... 7

**Statutes**

47 U.S.C. § 227 .................................................................................................... passim

Fla. Stat. § 501.059 ......................................................................................................... 7

Tex. Bus. & Com. Code Ann. § 302.001 ....................................................................... 7

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................... 3

**Regulations**

47 C.F.R. § 64.1200 ............................................................................................. passim

**FCC Opinions**

*In re Rules & Regulations Implementing the Telephone Consumer
  Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) .................................................. 10

*Targeting & Eliminating Unlawful Text Messages*,
  89 Fed. Reg. 5098 (Jan. 26, 2024) ........................................................................... 8, 9

**Other Authorities**

*Computerized Telephone Sales Calls and 900 Service:
  Hearings Before the S. Comm. on Commerce, Science & Transp.*,
  102d Cong. 68 (1991) ................................................................................................... 5

*Random House Webster's College Dictionary* (1st ed. 1991) ....................................... 4

Rose Eveleth, *The First Text Message, Sent Twenty Years Ago, Was 'Merry Christmas'*, SMITHSONIAN MAGAZINE (2012) ...................................................... 4

## I. INTRODUCTION AND BACKGROUND

Plaintiff Victoria Soboleski is a repeat litigant who has filed at least nine putative class actions over the last year.[1] In 2024, she filed two lawsuits complaining about text messages she received on her old phone, 586-843-XXXX (the "Original Number"). *Luminess*, No. 2:24-cv-13397-LJM-KGA, ECF No. 1 ¶¶ 8-14 (alleging she received text messages on the Original Number); *Party Pizza*, No. 2:24-cv-13138-MFL-CI, ECF No. 1 ¶¶ 8-14 (same). She then obtained a reassigned phone number—586-420-XXXX (the "New Number")—in March 2025. Compl. ¶¶ 8–12. Rather than texting "STOP" in response to the first message, which would have immediately stopped all further messages and precluded any claim,[2] she waited to receive multiple messages before responding STOP. *Id.* ¶ 14. In the other cases, she failed to opt out entirely. *See, e.g.*, *Clutch*, No. 2:25-cv-11698-BRM-DRG, ECF No. 1 ¶ 14 (failing to opt-out after receiving five messages); *MCM Products USA Inc.,* No. 2:25-cv-11699, ECF No. 1 ¶ 14 (same); *Kors,* No. 2:25-cv-11838-DPH-CI, ECF No. 1 ¶ 14; *Crumble LLC*, No. 5:25-cv-11839-JEL-DRG, ECF No. ¶ 14 (same, seven messages).

---

[1] *Soboleski v. Luminess Direct LLC*, No. 2:24-cv-13397-LJM- KGA (E.D. Mich. Dec. 18, 2024); *See Soboleski v. Party Pizza Roseville, Inc.*, No. 2:24-cv-13138-MFL-CI (E.D. Mich. Jan. 15, 2025); *Soboleski v. Clutch, Inc.*, No. 2:25-cv-11698- BRM-DRG (E.D. Mich. June 5, 2025); *Soboleski v. MCM Products USA Inc.,* No. 2:25-cv-11699 (E.D. Mich. June 8, 2025); *Soboleski v. Michael Kors (USA), Inc.*, No. 2:25-cv-11838-DPH-CI (E.D. Mich. June 19, 2025); *Soboleski v. Crumble LLC*, No. 5:25-cv-11839-JEL-DRG (E.D. Mich. June 19, 2025); *Soboleski v. Dispo Holdings LLC*, No. 2:25-cv-11856-LVP-DRG (E.D., Mich. June 20, 2025); *Soboleski v. Extended Stay America, Inc.*, No. 3:25-cv-00526-KDB-SCR (W.D.N.C. July 18, 2025).

[2] A cause of action under Section 227(c)(5) may only arise where the person receives "***more than one*** telephone call within any 12-month period by or on behalf of the same entity[.]"

1

After she received text messages intended for the consenting prior subscriber to the New Number, she filed multiple lawsuits. In this one, she alleges she received text messages to the New Number from Defendant TerrAscend Corp., promoting "Gage Cannabis Co.," a marijuana business. Compl. ¶¶ 13–15. Her claims fail for several reasons. Initially, Gage Cannabis Co. is an independent company that manages its own marketing communications. But Plaintiff didn't sue Gage; she sued its ultimate parent, TerrAscend. TerrAscend isn't licensed to sell marijuana in Michigan and doesn't send texts to promote that business. Moreover, to the extent she reassigned her phone number to manufacture TCPA liability, Plaintiff lacks statutory standing to sue for a TCPA violation.

But the Court does not need to get into any of those factual issues. That's because the TCPA's private action for the "do not call" claims Plaintiff asserts is explicitly limited to persons who receive "more than one telephone call[.]" *See* 47 U.S.C. § 227(c)(5); Compl., Count I, ECF No. 1 (asserting claims based on § 227(c) of the TCPA). Plaintiff doesn't allege that she received a "telephone call," just text messages. *See* Compl. ¶¶ 13–15. Text messages are not "telephone calls"—in ordinary conversation or statutory interpretation.

No one would interpret "Joe called Sally" to mean Joe *texted* Sally. It means exactly what it says: that Joe placed a telephone call to Sally. This was even more true when the TCPA was enacted in 1991, when text messages didn't exist. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment." (internal quotation and citation omitted)). Because

2

Plaintiff does not allege she received "more than one telephone call," she fails to state a claim under Section 227(c)(5), and the Court must dismiss the Complaint.

That conclusion is compelled by the Supreme Court's June 2025 ruling in *McLaughlin Chiropractic Associates. v. McKesson Corporation*, which requires this Court to interpret and apply the plain text of the TCPA, rather than deferring to an agency's "interpretation." 606 U.S. 146, 155 (2025). As multiple district courts have recently recognized in the wake of *McLaughlin*, "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025); *see also Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) ("[A] text message is not a 'telephone call'" under section 227(c)(5)). This Court should reach the same conclusion and dismiss the Complaint with prejudice.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings" after "the pleadings are closed—but early enough not to delay trial." Courts "assess a Rule 12(c) motion using the same standard that applies to [] a motion to dismiss under Rule 12(b)(6)." *Barber v. Charter T'ship of Springfield*, 31 F.4th 382 (6th Cir. 2022) (quotation omitted)). "[T]o survive a Rule 12(c) motion, the 'complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.  ARGUMENT: PLAINTIFF'S TCPA CLAIM FAILS BECAUSE SHE NEVER RECEIVED A TELEPHONE CALL

3

### A. Section 227(c) and Its Implementing Regulations Do Not Create a Private Right of Action for Text Messages

Congress created a private right of action under the TCPA's DNC provision for "a person who has received more than ***one telephone call*** within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5) (emphasis added). Neither Section 227(c) nor its implementing regulations, 47 C.F.R. § 64.1200(c), make any reference to text messages. A text message is not a "telephone call," and Plaintiff's claims therefore fail as a matter of law.

The TCPA does not define "telephone call." That omission makes sense: when Congress enacted the statute in 1991, the term was self-evident. Text messaging did not yet exist, and the only way to communicate by telephone was through voice.[3] Defining "telephone call" as a voice call would have been redundant.

Where Congress leaves a term undefined, courts interpret it according to its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). In 1991, the ordinary meaning of "telephone" was "an apparatus, system, or process for transmission of sound or speech to a distant point." *Random House Webster's College Dictionary* (1st ed. 1991), available at: https://archive.org/details/randomhousewebst00dict/page/n5/mode/2up. By that definition, a "telephone call" meant a voice transmission over the phone.

---

[3] Rose Eveleth, *The First Text Message, Sent Twenty Years Ago, Was 'Merry Christmas'*, SMITHSONIAN MAGAZINE (2012), https://www.smithsonianmag.com/smart-news/the-first-text-message-sent-twenty-years-ago-was-merry-christmas-152311567/.

4

Text messages, of course, are fundamentally different from voice calls. They do not tie up phone lines or circuits, and recipients can read them at their convenience. Like emails or app alerts, texts are passive written communications, not the intrusive voice calls that Congress sought to regulate in 1991. See *Computerized Telephone Sales Calls and 900 Service: Hearings Before the S. Comm. on Commerce, Science & Transp.*, 102d Cong. 68 (1991) ("Why The Legislation Is So Important").

Expanding "telephone call" to include text messages would "rewrite the TCPA to update it for modern technology"—exactly what the Supreme Court forbade in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) (reversing Ninth Circuit's interpretation of that term as impermissible attempted rewrite to modernize TCPA). Based on Plaintiff's reading, any digital message appearing on a phone—emails, WhatsApp messages, app notifications, or social media DMs—could be swept into Section 227(c). Congress didn't write such a sweeping prohibition, and ordinary speakers would not call any of those messages a "telephone call." That is especially clear given that all such messages are also received on devices that are not telephones at all. Moreover, Congress regulates some of these transmissions via other statutory regimes, like CAN-SPAM. 15 U.S.C. § 7701 (regulating email).

Both the Central District of Illinois and Northern District of Florida recently confirmed these principles in *Blackstone* and *CVS Pharmacy*, respectively, rejecting Section 227(c)(5) claims based on text messages, like Plaintiff asserts here. 2025 WL 2042764, at *1 (dismissing national and internal DNC claims under § 227(c) and FCC regulations §§ 64.1200(c)–(d)); 2025 WL 2491195, at *1–2 (dismissing national DNC

5

claim). After thoroughly analyzing the TCPA and the arguments in this motion, the *Blackstone* court concluded that "**under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.**" 2025 WL 2042764, at *4 (emphasis added); *CVS Pharmacy*, 2025 WL 2491195, at *3–4 (same). As the court explained, the statute's ordinary meaning made clear that "'telephone call' means something entirely different from 'text message'" and "nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Blackstone*, 2025 WL 2042764, at *4–6.

The reference to "telephone solicitation" in the TCPA and the FCC's regulations does not expand the private right of action under Section 227(c)(5) to include text messages. The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). "[M]essage" in this context refers to prerecorded voice messages and fax messages, which are regulated under different subsections. 47 U.S.C. §§ 227(b)(1)(B) (prohibiting "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message"); 47 U.S.C. § 227(d) (prescribing standards for fax messages and "artificial or prerecorded voice messages"). Accordingly, the phrase "telephone solicitation" "does not change the plain meaning analysis" and, on its face, "Section 227(a)(4) does not refer to 'text message.'" *Blackstone,* 2025 WL 2042764, at *4.

If anything, the definition of "telephone solicitation" reinforces that Section 227(c) only applies to telephone calls. Congress referred to "telephone call or message" in § 227(a)(4), but only to "telephone call[s]" in § 227(c)(5), confirming its private cause

6

of action for DNC claims does not "encompass all 'messages.'" *CVS Pharmacy*, 2025 WL 2491195, at *3 ("[C]ourts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." (cleaned up)); *see also Tomaszczuk v. Whitaker*, 909 F.3d 159, 166 (6th Cir. 2018) ("[D]ifferent words in a statute have different meanings").

Congress knows how to cover text messages when it chooses. It amended the TCPA in 2018 to address misleading caller identification information and specifically applied *that* prohibition to "a call made using a voice service" *and* "a text message sent using a text messaging service." *Id.* at § 227(e)(1). That section then separately defines "text message." In doing so, Congress defines text message as entirely distinct from a telephone call— stating that a text message "**does not include**" a "real-time, two-way voice [] communication" (*i.e.*, a telephone call). *Id.* at § 227(e)(iii) (emphasis added). If Congress wished to expand its private cause of action in 227(c) at the same time, it could have easily done so—as several states have done to their versions of the TCPA. *See, e.g.*, Fla. Stat. § 501.059(1)(j) (2024) (amending definition of "telephonic sales call" to include calls, texts, and voicemails); Tex. Bus. & Com. Code Ann. § 302.001 (as amended by Acts 2025, 89th Leg., ch. 964 (S.B. 140), § 1, eff. Sept. 1, 2025) (amending definition of "telephone call" to include "text or graphic messages").[4]

---

[4] Those state law amendments would be unnecessary if "telephone call" already included texts.

7

Accordingly, Plaintiff's claims here fail. The plain meaning of Section 227(c)(5) of the TCPA leaves no room for Plaintiff's claim. Both today, and in 1991 when the TCPA was enacted, "telephone call" does not and did not mean text message. The TCPA provides a private right of action for DNC claims based on telephone calls, not texts.

B.     **Any FCC Ruling to the Contrary Is Invalid.**

Although—pre-*McLaughlin*—the FCC informally opined that its regulations under Section 227(c) cover texts, the opinion is irrelevant. *See* Targeting & Eliminating Unlawful Text Messages, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024) (treating texts as "calls"). What matters for this Motion is not whether TerrAscend violated the TCPA (it didn't), but whether Plaintiff has a **private cause of action** under Section 227(c). She does not. The private action is for "telephone call[s]" alone, not text messages. *See supra* § III.A.

Congress could "reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *CVS Pharmacy*, 2025 WL 2491195, at *3. And regulating callers "could serve the purpose of protecting consumers even if Congress created no private right of action at all." *Id.* Under *McLaughlin* and *Loper Bright*, courts must apply the statute's plain meaning, not defer to contrary FCC interpretations of its own regulations, which use different language than the private

8

cause of action at issue in this case.⁵ 606 U.S. at 155, 168–69; 603 U.S. at 388–89. Both in 1991 and today, the ordinary meaning of "telephone call" is a voice call, and the FCC cannot rewrite the TCPA to say otherwise.

For decades, lower courts often erroneously deferred to interpretations by agencies like the FCC, even when they were counterintuitive and changed based on the administration in the White House. Most courts followed the FCC's expansive view of "autodialer," for example. That ended when the Supreme Court ***unanimously*** reversed that definition, refusing to interpret that term beyond the precise "autodialer" definition that Congress chose when it enacted the TCPA. *See Duguid*, 592 U.S. at 396–97. There, the Court confirmed that it "must interpret what Congress wrote," and "[s]enescent [outdated] as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading." *Id.* at 409.

That deference was, in part, due to the APA's perceived limitation on challenging agency interpretations in enforcement proceedings. In the few cases where Circuit Courts heard direct APA challenges, they reversed far more thoughtful FCC opinions. *See, e.g.*, *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v.*

---

⁵ Although the FCC would have had no authority to enact a rule that contradicts the plain text of the TCPA, here, the FCC chose not to exercise its formal rulemaking authority to regulate text messages. *Compare* 47 C.F.R. § 64.1200(a) (enacted under Section 227(b) and specifically includes "a text message, including a short message service (SMS) call"), *with* 47 C.F.R. § 64.1200(c) (enacted under Section 227(c) and makes no reference to text messages).

9

*Fed. Commc'ns Comm'n*, 885 F.3d 687, 695 (D.C. Cir. 2018) (alteration in original) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent."). Now, through *McLaughlin*, the Supreme Court confirmed that this Court must conduct that same analysis, which was formerly reserved for the circuit courts. 606 U.S. at 157 ("[T]he default rule is that district courts in enforcement proceedings may conclude that an agency's interpretation of a statute is incorrect"). And because the FCC opinion conflicts with the plain meaning of the statute, the Court may not defer to it.

Deferring to the FCC's "interpretation" and expanding Section 227(c)(5) to create liability for texts would invent a cause of action—a policy choice reserved to Congress, not the courts or the FCC. Both *Blackstone* and *CVS Pharmacy* recognized that *McLaughlin* prohibits that outcome. It would "legislate by reading into the TCPA something that is not there[.]" *Blackstone*, 2025 WL 2042764, at *5; *CVS Pharmacy*, 2025 WL 2491195, at *3 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose."). Deferring to the FCC and expanding the TCPA's private cause of action to cover text messages may seem tempting, "given the TCPA's purpose and the prevalence of text messaging in the U.S. today."[6] *Blackstone*, 2025

---

[6] The *Blackstone* court likewise rejected that the FCC's 2003 order even purported a text message as a "telephone call" under Section 227(c). *Id.* at *3 (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2003 Order"), 18 FCC Rcd. 14014, 14116 para. 165 (2003)). The court explained that portion of the order "was only addressing text messages sent using an automatic

10

WL 2042764, at *5. But "in the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible." *Id.* (quoting *Loper Bright*, 603 U.S. at 400). "It is for Congress," not the Court nor the FCC, "to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." *Id.*

In short, the statute's plain language controls. Section 227(c)(5) provides a private cause of action for "telephone call[s]," not text messages. Regardless of shifting FCC positions on what its regulations mean, this Court must apply the best reading of the private cause of action in Section 227(c) and dismiss the Complaint.

## IV. CONCLUSION

A "telephone call" is not a "text message," and this Court must apply the private cause of action in Section 227(c)(5) as written. Congress could, as states like Florida have, amend Section 227(c) to provide a private cause of action based on text messages. It has not done so. For now, the plain meaning of the TCPA requires that Plaintiff must have "received more than one *telephone call*" within twelve months to file a lawsuit. She did not, and her claims fail as a matter of law. The Court should dismiss the Complaint.

---

telephone dialing system or an artificial or prerecorded message[.]" *Id.* at *4. Because the opinion was related to Section 227(b), and not Section 227(c), the "2003 Order does not even address the specific provisions of the TCPA and its regulations at issue in this case." *Id. CVS Pharmacy* was even more emphatic, finding that even if the 2003 Order purported to expand Section 227(c) to text messages, the "appropriate respect" the Court owed that order didn't justify "adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." 2025 WL 2491195, at *3–4 n.3 (citing *McLaughlin*, 606 U.S. at 152).

11

Dated: October 1, 2025            Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Tel: (404) 782-0695
ryan@wtlaw.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

By: /s/ *Ryan D. Watstein*<br>Ryan D. Watstein