# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| VICTORIA SOBOLESKI, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 4:25-cv-11763-FKB-DRG |
| v. | Hon. District Judge J. Kay Behm<br>Hon. Magistrate Judge David R. Grand |
| TERRASCEND CORP., | |
| Defendant | |

---

## PLAINTIFF VICTORIA SOBOLESKI'S RESPONSE
## IN OPPOSITION TO DEFENDANT TERRASCEND CORP.'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

George T. Blackmore
31800 Northwestern Hwy
Suite 350
Farmington Hills, MI 48334
(888) 789-1715
gblackmore@provenresource.com

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiffs*

Plaintiff Victoria Soboleski hereby opposes Defendant TerrAscend Corp.'s motion for judgment on the pleadings (ECF No. 9), for the reasons explained in the accompanying Brief in Opposition.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Anthony Paronich*
Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

George T. Blackmore
31800 Northwestern Hwy
Suite 350
Farmington Hills, MI 48334
(888) 789-1715
gblackmore@provenresource.com

*Counsel for Plaintiff*

i

## CERTIFICATE OF SERVICE

I, Anthony Paronich, certify that on November 17, 2025, I filed Victoria Soboleski's Response in Opposition to Defendant's Motion for Judgment on the Pleadings with the Clerk of the Court using its CM/ECF system, which will automatically send electronic notification of this filing to all attorneys of record in this action.

/s/Anthony Paronich
Anthony Paronich

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VICTORIA SOBOLESKI, *individually and on behalf of all others similarly situated*,

        Plaintiff,

    v.

TERRASCEND CORP.,

        Defendant

Case No. 4:25-cv-11763-FKB-DRG
Hon. District Judge J. Kay Behm
Hon. Magistrate Judge David R. Grand

# PLAINTIFF VICTORIA SOBOLESKI'S BRIEF IN OPPOSITION TO DEFENDANT TERRASCEND CORP.'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Table of authorities ............................................................................. ii

Index ................................................................................................. vi

Issue presented ................................................................................. vii

Controlling or most appropriate authorities ....................................... viii

Introduction ........................................................................................ 1

Background ......................................................................................... 3

    I.    Legal background ................................................................. 3

    II.   Factual background ............................................................... 5

Legal standard ..................................................................................... 5

Argument ............................................................................................. 6

    I.    The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages ......................... 6

        A.    The plain meaning of the word "call" includes text messages. ...................................................... 6

        B.    That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions. ................................................... 9

        C.    TerrAscend's case for a narrower interpretation is unpersuasive. ....................................................... 12

    II.   Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation. ....... 22

Conclusion ......................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*Ashland Hospital Corp. v. Service Employees International Union,*
  *District 1199 West Virginia/Kentucky/Ohio,*
  708 F.3d 737 (6th Cir. 2013) ............................................................... 7

*Barber v. Charter Township of Springfield,*
  31 F.4th 382 (6th Cir. 2022) ................................................................ 6

*Cacho v. McCarthy & Kelly LLP,*
  739 F. Supp. 3d 195 (S.D.N.Y. 2024) ............................................... 10

*Daniel v. Trowbridge,*
  2025 WL 900058 (E.D. Mich. 2025).................................................... 6

*Davis v. CVS Pharmacy, Inc.,*
  2025 WL 2491195 (N.D. Fla. 2025) ........................... 12, 14, 15, 16, 17, 18, 19

*Dawson v. Porch.com,*
  2024 WL 4765159 (W.D. Wash. 2024)............................................... 20

*Delek US Holdings, Inc. v. United States,*
  32 F.4th 495 (6th Cir. 2022) ................................................................ 6

*Diamond v. Chakrabarty,*
  447 U.S. 303 (1980) .......................................................................... 13

*Facebook, Inc. v. Duguid,*
  592 U.S. 395 (2021) .......................................................................... 14

*Gager v. Dell Financial Services, LLC,*
  727 F.3d 265 (3d Cir. 2013) .............................................................. 24

*Harriel v. Bealls, Inc.,*
  2025 WL 2379617 (M.D. Fla. 2025).................................................. 10

*Henson v. Santander Consumer USA Inc.,*
  582 U.S. 79 (2017) ........................................................................ 7, 19

*Hudson v. Palm Beach Tan, Inc.*,
    2024 WL 4190513 (M.D.N.C. 2024) .................................................. 8

*Hulce v. Zipongo Inc.*,
    132 F.4th 493 (7th Cir. 2025) ............................................................ 10

*Jones v. Blackstone Medical Services*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025) .................................. 12, 13, 14, 15, 16, 19

*Keating v. Peterson's Nelnet, Inc.*,
    615 F. App'x 365 (6th Cir. 2015) ....................................... 1, 8, 11, 13

*Krakauer v. Dish Network, LLC*,
    925 F.3d 643 (4th Cir. 2019) ......................................................... 4, 18

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ............................................... 2, 22, 23, 24, 25

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ................................... 3, 8, 14, 17

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) ....................................................................... 22

*Mujahid v. Newity, LLC*,
    2025 WL 3140725 (N.D. Ill. 2025) ............................... 1, 7, 8, 12, 25

*New Prime, Inc. v. Oliveira*,
    586 U.S. 105 (2019) .......................................................... 2, 15, 16

*Pepper v. GVG Capital LLC*,
    677 F. Supp. 3d 638 (S.D. Tex. 2023) .............................................. 11

*Pickens v. Hamilton-Ryker IT Solutions, LLC*,
    133 F.4th 575 (6th Cir. 2025) .......................................................... 23

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ............................... 1, 7, 10, 12, 13, 24

*Seven County Infrastructure Coalition v. Eagle County*,
    605 U.S. 168 (2025) ....................................................................... 24

*Skidmore v. Swift Co.*,
  323 U.S. 134 (1944) ............................................................................ 25

*South Dakota v. Yankton Sioux Tribe*,
  522 U.S. 329 (1998) ............................................................................ 21

*Squillacote v. United States*,
  739 F.2d 1208 (7th Cir. 1984) ............................................................ 13

*U.S. Telecom Association v. FCC*,
  825 F.3d 674 (D.C. Cir. 2016) ............................................................ 16

*Wilson v. Medvidi*,
  2025 WL 2856295 (N.D. Cal. 2025) ..................... 1, 2, 3, 7, 9, 11, 12, 13, 14, 25

*Wilson v. Skopos Financial, LLC*,
  2025 WL 2029274 (D. Or. 2025) ....................................... 1, 2, 22, 25

*Wisconsin Central Ltd. v. United States*,
  585 U.S. 274 (2018) ............................................................................ 13

**Statutes**

47 U.S.C. § 227(a) ................................................................ 2, 3, 10, 11, 18

47 U.S.C. § 227(b) ................................................................ 2, 5, 8, 13, 19, 20, 21

47 U.S.C. § 227(c) ..................................................................................... *passim*

47 U.S.C. § 227(d) ......................................................................................... 13

47 U.S.C. § 227(e) ..................................................................................... 20, 21

Consolidated Appropriations Act of 2018,
  Pub. L. No. 115-141, 132 Stat. 348 (2018) ................................ 20, 21

Fla. Stat. § 501.059 ......................................................................................... 22

Tex. Bus. & Com. Code Ann. § 304.002 ....................................................... 22

## Rules & Regulations

47 C.F.R. § 64.1200 ................................................................ 4, 5, 9

## Administrative Materials

18 FCC Rcd. 14014 (2003) .................................................. 1, 5, 9, 24

30 FCC Rcd. 7961 (2015) ....................................................... 5, 24

38 FCC Rcd. 12247 (2023) ................................................... 5, 9, 24

*Hernandez*,
    2018 WL 6830220 (F.C.C. Dec. 21, 2018) ................................. 5, 9, 24

## Dictionaries

*Black's Law Dictionary* (6th ed. 1990) .................................... 10

*Oxford English Dictionary* (2d ed. 1989) .............................. 7, 10

*Random House Webster's College Dictionary* (1991) ................ 7, 10, 12

*Webster's Third New International Dictionary* (2002) ................... 7

## Other Authorities

Paging Network, Inc., Annual Report (1991),
    https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/
    639549.pdf ....................................................................... 8

**INDEX**

| Exhibit Letter | Exhibit description |
|:---:|:---:|
| A | Paging Network, Inc., Annual Report (1991) |

## ISSUE PRESENTED

Whether the private right of action in section 227(c)(5) of the Telephone Consumer Protection Act permits enforcement of FCC rules that prohibit sending commercial text messages to telephone numbers on the national Do Not Call List.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)

- *Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575 (6th Cir. 2025)

- *Keating v. Peterson's Nelnet, Inc.*, 615 F. App'x 365 (6th Cir. 2015)

- *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)

- *Mujahid v. Newity, LLC*, 2025 WL 3140725 (N.D. Ill. 2025)

- *Wilson v. Medvidi*, 2025 WL 2856295 (N.D. Cal. 2025)

- *Wilson v. Skopos Fin.*, *LLC*, 2025 WL 2029274 (D. Or. 2025)

## INTRODUCTION

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist yet when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both the FCC and courts have long recognized, the plain meaning of the word "call" in the TCPA encompasses any attempt to communicate by phone, "regardless of whether that call is communicated by voice or text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ; *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2–3 (N.D. Ill. 2025) ; *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. 2025); *Wilson v. Skopos Fin.*, *LLC*, 2025 WL 2029274, at *4–5 (D. Or. 2025).

The structure and purpose of the TCPA's Do Not Call List provisions reinforce that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Keating v. Peterson's Nelnet, Inc.*, 615 F. App'x 365, 370–71 (6th Cir. 2015) . The statute directs the FCC to prohibit

"telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" for a commercial purpose; that broadly inclusive language encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3. And the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant TerrAscend Corporation insists that no one would describe a text message as a "telephone call" in "ordinary conversation." ECF No. 9-1, PageID.80. But that's not how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). In fact, modern conversational parlance can be downright misleading when times have changed. *See id.* at 114–16. And TerrAscend also has no answer for the TCPA's nearby autodialer provisions, where the word "call" is used to describe written messages received on a pager—the most analogous technology to text messaging that existed in 1991. *See* 47 U.S.C. § 227(b)(1)(A)(iii). If a text "call" to a pager can violate the TCPA, a text "call" to a cell phone can too. *See Lozano v. Twentieth Century Fox Film Corp.*, 702

F. Supp. 2d 999, 1004–05 (N.D. Ill. 2010).

This Court should deny the motion to for judgment on the pleadings.

## BACKGROUND

### I.      Legal background

**1.** Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List, and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4).

The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). That definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Wilson v. Medvidi, Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. 2025).[1]

The statute grants the FCC discretion to determine the rules governing the Do Not Call List. The statute expressly empowers the FCC to make rules "that the

---

[1] Unless otherwise specified, all internal quotation marks, alterations, and citations are omitted from quotations throughout.

Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). And it directs the FCC to evaluate alternative approaches based on open-ended criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." *Id.* § 227(c)(1)(A).

Any Do Not Call List regulations must meet certain statutory criteria. *See id.* § 227(c)(3)–(4). As relevant here, the statute specifies that the FCC's rules must "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. *Id.* § 227(c)(3)(F).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. It grants an express private right of action in federal court to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

**2.** The FCC's implementing regulations include 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call List. The FCC has also determined in a series of orders and, more recently, in a formal

4

regulation that this rule applies to "text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023).[2]

## II.     Factual background

Ms. Soboleski registered her personal cell phone number on the national Do Not Call List. ECF No. 1, PageID.2. Thereafter—without any prior relationship with Ms. Soboleski or her consent—TerrAscend sent her multiple telemarketing text messages, promoting an online cannabis business that it owns and operates. ECF No. 1, PageID.2–7. Ms. Soboleski then sued to enforce her rights under the TCPA and its implementing regulations, and to enforce the rights of others who received unauthorized marketing messages from TerrAscend. ECF No. 1, PageID.7–8.

## LEGAL STANDARD

A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Barber v. Charter Twp. of Springfield,* 31 F.4th

---

[2] The FCC's interpretation of the word "call" was first discussed in the context of the TCPA's nearby prohibitions on autodialed calls, found in section 227(b). *See* 18 FCC Rcd. at 14115 ¶ 165. But the FCC has since clarified that it applies to section 227(c), too. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. at 12256–57 ¶ 26. TerrAscend is therefore mistaken when it says that "the FCC chose not to exercise its formal rulemaking authority to regulate text messages" under the Do Not Call List provisions of section 227(c). *See* ECF No. 9-1, PageID.87 n.5. TerrAscend overlooks section 64.1200(e), a formal rule that makes explicit that the Do Not Call List rules apply to "text messages to wireless telephone numbers."

382, 386–87 (6th Cir. 2022). A court therefore accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff to determine whether the complaint states a facially plausible claim for relief. *See id.*

## ARGUMENT

## I.     The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.

TerrAscend contends that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect. The plain meaning of the word "call," long recognized by other courts and the FCC, refutes that argument. The statutory context confirms that a text can be a "call." And TerrAscend's arguments in support of its contrary interpretation do not withstand scrutiny.[3]

### A.     The plain meaning of the word "call" includes text messages.

**1.** To interpret a statutory term, courts look to its "ordinary meaning" when the statute was enacted, often "by reference to dictionaries in use at the time." *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022). Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a

---

[3] TerrAscend teases possible arguments that Soboleski "lacks statutory standing" or should have sued a different corporate entity. ECF No. 9-1, PageID.80. But it admits that those are "factual issues" that this Court need not address now. *Id.* Those "undeveloped" arguments are therefore forfeited. *Daniel v. Trowbridge*, 2025 WL 900058, at *5 (E.D. Mich. 2025) (collecting cases).

telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting *Webster's Third New International Dictionary* (2002)).[4]

Like other courts, the Sixth Circuit has held that this definition—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress intended in 1991, when the TCPA was enacted. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013). And texting is, of course, a means of communicating with someone by telephone. So the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025).

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the

---

[4] This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone").

statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[5] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024); *see, e.g., Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

Likewise, the FCC determined as early as 2003 that, when the TCPA says "call," it "encompasses both voice calls and text calls to wireless numbers." 18 FCC

---

[5] *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

Rcd. 14014, 14115 ¶ 165 (2003). The FCC first announced its interpretation of the word "call" in the context of the TCPA's autodialer provisions, presumably because those provisions of the statute use the word more extensively. *See Medvidi*, 2025 WL 2856295, at *3. But the FCC has  since confirmed, including in a formal regulation, that the meaning of the word "call" is the same in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018). That interpretation reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3.

### B.    That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.

TerrAscend's argument focuses mainly on the single use of the word the "call" in section 227(c)(5). *See* ECF No. 9-1, PageID.83–89. But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include

cell phone subscribers. *See, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). That reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added).[6]

More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions.  47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) (Do Not Call List liability turned on whether a

---

[6] *See also Message*, *Random House Webster's New College Dictionary* (1st ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

text message had the requisite commercial purpose). At the same time, the statute uses broad, inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Medvidi*, 2025 WL 2856295, at *3 (explaining that the "telephone solicitation" definition "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted"); *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (similar).

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And nothing in the TCPA suggests that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.[7]

---

[7] TerrAscend is therefore wrong that texts are less "intrusive" than voice calls. ECF No. 9-1, PageID.83. The Sixth Circuit rejected that argument in *Keating*. 615 F. App'x at 371. And other courts have agreed that "a voice message or a text message are not distinguishable in terms of being an invasion of privacy."

### C.     TerrAscend's case for a narrower interpretation is unpersuasive.

TerrAscend would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the words "telephone call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. ECF No. 9-1, PageID.82–86. Its arguments mainly rely on two recent district court cases, *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025), and *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), *appeal docketed*, No. 25-2398 (7th Cir. Aug. 12, 2025). *See* ECF No. 9-1, PageID.81, 83–84. But none of the arguments made by TerrAscend or by those cases is persuasive.

**1.** TerrAscend has a few arguments for reading "telephone call" in section 227(c)(5) as limited to voice calls. None of them holds up.

**a.** First, TerrAscend argues that "telephone call" must refer to a "voice transmission" because of the word "telephone." ECF No. 9-1, PageID.82. It cites a dictionary definition that says a "telephone" in 1991 was something used for the "transmission of sound or speech." *Id.* (citing *Random House Webster's College Dictionary* (1st ed. 1991)). But that's a red herring. There's no question that a text is a "telephone" communication; of course it is. It's sent to a "telephone number,"

---

*Satterfield*, 569 F.3d at 954; *see, e.g.*, *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2.

just like other transmissions that can violate the Do Not Call List rules. *See* 47 U.S.C. § 227(c)(3)(F). And other provisions of the TCPA refute TerrAscend's restrictive interpretation of the word "telephone," by using the word in relation to written communication such as pages and faxes. *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (pages); *id.* § 227(b)(1)(C) (faxes); *id.* § 227(d) (faxes). That's why the key question is the meaning of the word "call," not the meaning of the word "telephone." *See, e.g.*, *Satterfield*, 569 F.3d at 953–54 & n.3; *Keating*, 615 F. App'x at 370.

**b.** TerrAscend (echoing *Jones*) insists that "telephone call" cannot encompass text messages because "[t]ext messaging did not yet exist" in 1991. ECF No. 9-1, PageID.82; *see Jones*, 2025 WL 2042764, at *4.

That's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. *See Keating*, 615 F. App'x at 370; *Medvidi*, 2025 WL 2856295, at *2. But statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980). "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (similar example with Volkswagens).

13

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007. And because the text already covers text messages, there is no need to "rewrite the TCPA to update it for modern technology." ECF No. 9-1, PageID.83 (quoting *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)).[8]

**c.** TerrAscend says that in "ordinary conversation" it sounds odd to refer to a text message as a telephone call. ECF No. 9-1, PageID.80. *Jones* and *Davis* also rely on that same intuition—both courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends

---

[8] TerrAscend likens this case to *Duguid*, where the Supreme Court declined to read the TCPA's technical definition of prohibited "autodialer" technology more broadly than its text would bear. *See* ECF No. 9-1, PageID.83, 87. But contrasting that case with this one actually underscores why TerrAscend's arguments don't work. The autodialer definition at issue in *Duguid* was: "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 592 U.S. at 402. That is a precise and technical definition, reflecting Congress's narrow focus on a specific "number generator technology" that "caused unique problems." *Id.* at 408. Thus, "*Duguid*'s quarrel [was] with Congress, which did not define an autodialer as malleably as he would have liked." *Id.* at 409. But here the meaning of "call" and its context suggest the opposite: Congress *did* use language that was general enough to evolve with the times, so the plain text *does* encompass modern text messages.

14

there." *Davis*, 2025 WL 2491195, at *1.[9]

No doubt most people wouldn't use "call" the way the TCPA does in casual conversation, especially nowadays. *See* ECF No. 9-1, PageID.80. In 2025, text messages are ubiquitous, and society has developed a whole vocabulary around them—think "emoji," "group chat," and so forth. As part of that texting-specific lexicon, we are now accustomed to saying "text message" or just "text" to describe written messaging between phones.

But statutory interpretation does not turn on modern colloquial usage. To the contrary, when language has evolved since a statute's enactment, current usage can be misleading. For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements between employers and employees," and thus exclude independent contractors. 586 U.S. 105, 114 (2019). But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not

---

[9] *See Davis*, 2025 WL 2491195, at *1 ("No normal person refers to a text message, or thinks of a text message, as a 'call.'"); *Jones*, 792 F. Supp. 3d at 899 ("[I]n today's American parlance, 'telephone call' means something entirely different from 'text message.'").

just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when a mismatch arises between current intuitions and the original meaning at the time of enactment, the latter controls—not (as TerrAscend's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 2025 WL 2491195, at *1, or "today's American parlance," *Jones*, 2025 WL 2042764, at *4.

   **d.** TerrAscend argues that reading "call" to include text messages risks subjecting other smartphone capabilities—such as "e-mails" and "app notifications"—to Do Not Call List regulation. *See* ECF No. 9-1, PageID.83. But that argument just confirms that TerrAscend's interpretation of "call" ignores its context. A Do Not Call List violation occurs only when a prohibited "telephone solicitation" is directed to a listed "telephone number." 47 U.S.C. § 227(c)(3)(F). An e-mail address is not a "telephone number," so merely receiving an e-mail on a phone doesn't make it a TCPA violation. The same goes for most push notifications.[10]

   **2.** TerrAscend's interpretation fares no better when it comes to the broader

---

[10] And to the extent there is any question about how the Do Not Call List rules might apply to certain modern messaging apps, that sort of question is precisely why Congress left the specifics of any Do Not Call List rules up to the expert judgment of the FCC. *Cf. U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (delegation was evidence that Congress expected communications technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it").

statutory context.

**a.** TerrAscend cannot square its anomalous reading of section 227(c)(5)'s private right of action with the substantive Do Not Call List provisions it exists to enforce. TerrAscend tries to do so in two different ways, neither of which works.

First, TerrAscend tries arguing that the substantive provisions don't apply to texts either. ECF No. 9-1, PageID.84. It says they don't meet the statutory definition of a prohibited "telephone solicitation," because (according to TerrAscend) not only are text messages not calls, they aren't *messages* either. *See id.* That's as wrong as it sounds. As noted above, the word "message" covers texts even more clearly than the word "call," because contemporary definitions of "message" encompassed both oral *and written* communication. *See supra*, Part I.B.[11]

Then, perhaps because "text messages aren't messages" isn't a promising avenue, TerrAscend also attacks the broad definition of "telephone solicitation" a different way. Citing *Davis*, the company contends that by inclusively defining a "telephone solicitation" as "the initiation of a telephone call or message" in section

---

[11] TerrAscend's theory is that "message" might have been intended to convey that a "telephone solicitation" can be a "prerecorded voice message[]" or a "fax message." ECF No. 9-1, PageID.84. But even if that were what Congress had in mind *at the time*—when text messaging didn't exist yet—that would not preclude the definition from applying to text messages *going forward*. *See, e.g.*, *Lozano*, 702 F. Supp. 2d at 1005 (endorsing a similar characterization of section 227(a)(4) while still holding that a text is a "call"). Again, it's the plain meaning of the statutory terms that controls, not the applications Congress had in mind in 1991. *See supra*, Part I.C.1.b.

227(a)(4), and then later referring only to a "telephone call" in section 227(c)(5), Congress intended to give section 227(c)(5)'s private right of action a narrower scope than the substantive provisions of section 227(c). *See* ECF No. 9-1, PageID.84–85 (citing *Davis*, 2025 WL 2491195, at \*2). On this theory, the FCC presumably *can* prohibit telemarketing texts to numbers on the Do Not Call List, but private litigants may enforce those rights only when a voice call is involved.

That reading of the statute doesn't work either. Neither TerrAscend nor *Davis* identifies any reason Congress would have intended that odd result. And the text of section 227(c)(5) suggests otherwise—first, by being much more explicit about different ways that the private right of action actually is limited (requiring "more than one" call "within any 12-month period"); and, second, by linking the private right of action to "violation of the regulations" (not any particular subset thereof). The reference to "violation of the regulations," in particular, suggests that section 227(c)(5) is simply "a straightforward provision designed to achieve a straightforward result"—making violations of the FCC's rules actionable. *See Krakauer*, 925 F.3d at 650.

Moreover, if Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so with the word "call" would have been a strange way to go about it. After all, the word "call" *does* include textual communication in other provisions of the statute. *See supra*, Part I.A. If

Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

**b.** TerrAscend also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA. TerrAscend and its cases do not dispute that "call" covers text messages in the autodialer provisions. Nor could they: The meaning of "call" is especially clear in section 227(b) because it's used there to describe a (typically text-focused) transmission to a "paging service." *See supra*, Part I.A. In response, all TerrAscend's cases say is that section 227(b) is a different provision and could in theory be broader than section 227(c). *See Jones*, 792 F. Supp. 3d at 900–01; *Davis*, 2025 WL 2491195, at *2.

What's missing, however, is any credible reason to think that "call" *actually does* mean something broader in section 227(b) than in section 227(c). Absent good reason to think otherwise, a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. TerrAscend doesn't say why the meaning of "call" would differ between the two provisions. Nor does *Jones*. The only possible distinction comes from *Davis*, which notes that 227(b) says it's unlawful to make "any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call." *See* 2025 WL 2491195, at *2. But, as explained above, the word "telephone" isn't doing any work here. *See supra*, Part I.C.1.a. And "any" is hardly unique to section 227(b)(1)(A); section 227(c) uses

19

similarly expansive modifiers, requiring the FCC to "prohibit *any* person from making or transmitting a telephone solicitation to the telephone number of *any* subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F) (emphases added); *see supra*, Part I.B.

To the contrary, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Again, Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. *See supra*, Part I.C.2.a. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson v. Porch.com*, 2024 WL 4765159, at *5 (W.D. Wash. 2024).

**c.** Finally, TerrAscend says that an entirely separate provision, added to the statute in 2018, distinguishes between calls and text messages. Namely, TerrAscend cites definitions of "caller identification" found in the Consolidated Appropriations Act of 2018. Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1092–93 (2018); *see* 47 U.S.C. § 227(e)(8)(A)–(B). Those provisions prohibit false or misleading "caller identification information," defined as information about the source of "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A). TerrAscend says that shows that a "call" and a "text message" are distinct. *See* ECF No. 9-1, PageID.85.

But, if anything, section 227(e)(8) actually shows the opposite: It reinforces

that texts *are* calls in the lexicon of the TCPA. It describes a "text message" as something that comes from a "caller," just like a traditional voice call does. So the more natural takeaway is that section 227(e)(8) identifies two different types of calls—voice calls and text messages—both of which originate with a "caller" and therefore require "caller identification." Unlike TerrAscend's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA. *See supra*, Parts I.A–B.

And even if section 227(e) did distinguish between a "text message" and a "call" as TerrAscend contends, that wouldn't change the best reading of section 227(c). When Congress enacted section 227(e) in 2018, Congress directed that nothing therein "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Pub. L. No. 115-141, div. P, § 503, 105 Stat. 348, 1094. That would include the FCC rules and orders that interpreted "call" to include text messages.  Moreover, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998). Surely, that's especially true here, where the Congress that enacted original TCPA in 1991 and the Congress that enacted section 227(e)(8) in 2018 legislated on opposite sides of a seismic shift in phone technology. The more meaningful reference point is the meaning of "call" in section 227(b), which was enacted at the same time as section 227(c), and which

clearly uses "call" to refer to written messages. *See supra*, Part I.A.[12]

## II. Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). As at least one other court has held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

**1.** To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of the statute. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025).

---

[12] TerrAscend also cites recent state-level legislation clarifying that terms like "telephone call" include text messages. *See* ECF No. 9-1, PageID.85 & n.4. It's not clear how recent state legislation could shed light on the TCPA's meaning when it was enacted in 1991. But to the extent they matter at all, the cited statutes cut against TerrAscend: They show that there's nothing odd about defining "telephone call" to include text messages. *See* Tex. Bus. & Com. Code Ann. § 304.002(10)(C) ("telephone call" definition includes "a text or graphic message"); Fla. Stat. § 501.059(1)(j) ("telephonic sales call" definition includes a "text message").

TerrAscend says this means that the FCC's views are "irrelevant" and that this court "may not defer" to the agency. ECF No. 9-1, PageID.86, 88. That's incorrect.

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility." *Loper Bright*, 603 U.S. at 395.

**2.** It therefore would honor Congress's intent to "respect [that] delegation" and accept the FCC's "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395, 413. The FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n.59. That conclusion aligns with the FCC's determination that cell phone numbers may be listed, and that the word "call" confers protection from unwanted text messages in other TCPA contexts. *Id.* Moreover, the FCC has consistently adhered to that interpretation of "call" for more than two decades, dating back to the earliest years of the technology, when text messaging first became common. *See* 18 FCC Rcd. at 14115 ¶ 165 (2003); 30 FCC Rcd. at 8020 ¶¶ 115–16 (2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (2018); 38 FCC Rcd. at 12256–57 ¶ 26 (2023). That conclusion is "reasonable and reasonably explained," and therefore warrants deference. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

Indeed, back when *Chevron* deference applied, courts often deferred to the FCC's judgment about the meaning of "call" in the TCPA upon finding it to be reasonable. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (granting the FCC *Chevron* "deference to hold that a text message is a 'call' within the TCPA"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 & n.2 (3d Cir. 2013) (following *Satterfield*). After *Loper Bright*, there are many cases where agencies' reasonable decisions are

no longer entitled to deference, but this is not one of them. The FCC's judgment about the status of text messages under its rules is as worthy of deference now as it was then. *See Skopos Fin.*, 2025 WL 2029274, at *4.

**3.** Alternatively, the FCC's interpretation should—at the very least—be accorded "great weight." *Loper Bright*, 603 U.S. at 388. The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with the "power to persuade." *Id.*; *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139–140); *see Mujahid*, 2025 WL 3140725, at *3; *Medvidi*, 2025 WL 2856295, at *3.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion.

Dated: November 17, 2025                    Respectfully submitted,

                                            */s/ Anthony Paronich*
George T. Blackmore                         Anthony Paronich
31800 Northwestern Hwy                      **PARONICH LAW, P.C.**
Suite 350                                   350 Lincoln Street, Suite 2400
Farmington Hills, MI 48334                  Hingham, MA 02043
(888) 789-1715                              (617) 485-0018
gblackmore@provenresource.com               anthony@paronichlaw.com

                                            *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Anthony Paronich, certify that on November 17, 2025, I filed Victoria Soboleski's Brief in Opposition to Defendant's Motion for Judgment on the Pleadings with the Clerk of the Court using its CM/ECF system, which will automatically send electronic notification of this filing to all attorneys of record in this action.

/s/Anthony Paronich
Anthony Paronich