# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| VICTORIA SOBOLESKI, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>TERRASCEND CORP.,<br><br>        Defendant. | Case No.: 4:25-cv-11763-FKB-DRG<br>District Judge F. Kay Behm<br>Magistrate Judge David R. Grand |

## DEFENDANT TERRASCEND CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.   ARGUMENT .......................................................................................................2

    A.   A Text Message is Not a "Telephone Call." ..........................................2

    B.   Plaintiff's 'Evolving Technology' Theory Fails ....................................3

    C.   The Court Cannot Substitute "Any Call" For "Telephone Call." .........6

    D.   The Perceived Purpose of Section 227(c) Doesn't Override Its Plain Text ........................................................................................................8

    E.   The FCC Has No Authority to Rewrite the TCPA .............................10

    F.   Alternatively, the Court Should Certify This Question for Immediate Interlocutory Appeal ...........................................................................11

III.   CONCLUSION .................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)..................................................................................9, 10

*Ashland v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*,
   708 F.3d 737 (6th Cir. 2013)................................................................................8

*Chickasaw Nation v. United States*,
   534 U.S. 84 (2001)................................................................................................3

*Davis v. CVS Pharmacy*,
   2025 WL 2491195 (M.D. Fla. Aug. 26, 2025)...............................................passim

*Dilanyan v. Hugo Boss,*
   2025 WL 3549868 (C.D. Cal. Dec. 3, 2025)......................................................1, 5

*El Sayed v. Naturopathica Holistic Health, Inc.*,
   2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ...................................................1, 11

*Esquivel v. Mona Lee, Inc.*,
   2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) ........................................................4

*Facebook, Inc. v. Duguid,*
   592 U.S. 395 (2021)................................................................................................5

*Henson v. Santander Consumer USA Inc.*,
   582 U.S. 79 (2017)..................................................................................................6

*Hulce v. Zipongo Inc.,*
   132 F.4th 493 (7th Cir. 2025)..................................................................................9

*In re Trump*,
   874 F.3d 948 (6th Cir. 2017)................................................................................12

*Jones v. Blackstone,*
   792 F. Supp. 3d 894 (C.D. Ill. 2025) .............................................................3, 4, 11

*Kungys v. United States*,
 485 U.S. 759 (1988)..................................................................................................3

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024)...............................................................................2, 10, 11, 12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
 606 U.S. 146 (2025).........................................................................................passim

*Mujahid v. Newity, LLC,*
 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025).........................................................4

*New Prime, Inc. v. Oliveira*,
 586 U.S. 105 (2019)..............................................................................................3, 4

*Perrin v. United States*,
 444 U.S. 37 (1979)...................................................................................................1

*Piet v. Office Depot, LLC*,
 No. 9:24-cv-81488-WPD (S.D. Fla. Nov. 25, 2025) ..............................................8

*Satterfield v. Simon & Schuster, Inc.*,
 569 F.3d 946 (9th Cir 2009)................................................................................4, 8

*Soboleski v. MCM Products USA Inc.*,
 No. 25-cv-11699 (E.D. Mich.)...............................................................................12

*Soboleski v. Michael Kors (USA), Inc.*,
 No. 25-cv-11838 (E.D. Mich.)...............................................................................12

*Wilson v. Better Mortg. Corp.*,
 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025)...........................................................4

*Wilson v. Medvidi,*
 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025)...........................................................4

*Wilson v. Skopos Fin., LLC*,
 2025 WL 2029274 (D. Or. 2025)............................................................................4

*Wisconsin Central Limited v. United States,*
  585 U.S. 274 (2018)...................................................................................................6

**Statutes**

15 U.S.C. § 6104 .......................................................................................................9

15 U.S.C. § 7701 .......................................................................................................2

28 U.S.C. § 1292 .....................................................................................................11

47 U.S.C. § 227 .................................................................................................passim

I.  INTRODUCTION

TerrAscend's motion is based on the bedrock legal duty of courts to interpret statutes according to their "ordinary, contemporary, common meaning," *Perrin v. United States*, 444 U.S. 37, 42 (1979), and apply them as written. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Section 227(c)(5) limits a private action to a person "who has received more than one telephone call within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). The only courts to perform the analysis *McLaughlin* requires confirm what common sense tells us: a text message is not a "telephone call," and Plaintiff's claim therefore fails. *See* ECF 9-1 at 3; *see also El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) (quotation omitted) ("[T]he statutory text here is clear, and a text message is not a 'telephone call.'"); *Dilanyan v. Hugo Boss,* 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025) (noting that "the plain meaning of 'telephone call' at the time could not possibly include a text message," but ultimately holding it was bound by Ninth Circuit precedent).

Plaintiff suggests that TerrAscend's reading reflects "modern intuition." But the opposite is true. In 1991—when the TCPA was enacted—the term "telephone call" had an even narrower and more settled meaning than it does today. At that time, the phrase referred exclusively to voice communications placed over a telephone line. Written messages to telephones were not part of the conceptual landscape.

Plaintiff would have this Court expand "telephone call" to cover a broad range of communications simply because they are transmitted to or received on a telephone number. Nothing in the TCPA suggests Congress intended that "telephone call" had such a boundless definition. That Congress later passed statutes to regulate faxes and email, both commonly sent over phone lines and/or via cell phones, proves this point.

Presumably recognizing her strained reading, Plaintiff shifts focus exclusively to the broader term "call," asking the Court to import the phrase "any call" from

1

Section 227(b) to Section 227(c)(5). But her reading ignores the differences between those subsections, and Congress's use of a narrower term in Section 227(c)(5).

The perceived purpose of Section 227(c) cannot justify a reading contrary to the plain text either. "In the business of statutory interpretation, if [a reading] is not the best, it is not permissible." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Thus, Plaintiff's attempt to invoke the definition of "telephone solicitation" and reliance on FCC guidance to rewrite Section 227(c)(5) fails. Congress regularly gives agencies broader authority to regulate than it gives private persons to sue, including under other provisions of the TCPA and the parallel Telemarketing Sales Rule (TSR). Whether Congress similarly limited the FCC's authority to regulate text messages is irrelevant. The question is whether Plaintiff states a private cause of action, not a regulatory violation. She does not and thus fails to state a claim.

## II.  ARGUMENT

### A.  A Text Message is Not a "Telephone Call."

Plaintiff's textual argument fails at the threshold because the meaning of "telephone call"—in 1991, even more than today—did not include text messages. She suggests that because a text is sent by telephone, it's a "telephone call." ECF No. 14 at 6–7. But, as she later admits, no ordinary speaker would say they "received a telephone call" when referring to a text. *Id.* at 15. That's not "modern intuition"; it's the plain meaning of the words. A person can "call" out to someone in another room, but a "telephone call" to them requires a voice call by telephone.

Plaintiff's textual position also has no limiting principle, which further shows its downfall. If a written communication is a "telephone call" simply because it's sent to a telephone, then the same logic sweeps in electronic messages, which Congress separately regulated through the CAN-SPAM Act, 15 U.S.C. § 7701, *et seq*. It would also include facsimile messages, which are messages transmitted to a telephone number. But Congress knew faxes were not "telephone call[s]," which is

2

why it passed the 2005 Junk Fax Prevention Act. 47 U.S.C. § 227(b). These statutes confirm that Congress understood "telephone call" to refer to voice calls, not every message that happens to traverse a telephone network or winds up on a phone.

Any doubt was laid to rest when Congress expressly distinguished between "a call made" and "a text message sent" in the TCPA. 47 U.S.C. §§ 227(e)(8), (i)(1)(A). That distinction confirms that Congress understands text messages to be a separate mode of communication—not merely a subset of "calls." It follows that when Congress used the *even narrower* phrase "telephone call" in § 227(c)(5), it did not intend to include text messages by implication or linguistic shorthand through the word "call," as Plaintiff argues. ECF No. 14 at 20–21. If Congress wanted to expand § 227(c)(5)'s private action at the same time to cover texts, it knew how and could have done so expressly—as several states have done in their TCPA analogues.

Plaintiff knows her textual argument is far-fetched. That's why her remaining arguments focus only on the term "call," and she urges the Court to ignore the term "telephone." *Id.* at 13–14, 19. But the "cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988) (Scalia, J., plurality op.). The court must apply "telephone" unless it's convinced it was a drafting mistake or "repugnant to the rest of the statute[.]" *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). Nothing in the text of § 227(c)(5), or in the rest of the TCPA, supports that.

B.  **Plaintiff's 'Evolving Technology' Theory Fails.**

Plaintiff's evolving technology theory also fails, as she mischaracterizes both the governing standard and the post-*McLaughlin* cases that apply it. ECF No. 14 at 2, 13–16. She invokes *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019), for the proposition that courts must look to a statute's meaning at the time of adoption, and accuses *CVS* and *Blackstone* of relying on "modern intuitions" about text messaging.

3

But those decisions do exactly what *New Prime* requires: they consult contemporaneous dictionaries, focus on the full phrase "telephone call" (not "any call" as in § 227(b)), and conclude that in 1991 that phrase referred to a live voice conversation, not written data. *See Davis v. CVS Pharmacy*, 2025 WL 2491195, at *1–3 (M.D. Fla. Aug. 26, 2025); *Jones v. Blackstone*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025). Any references to present-day understanding confirm the historical analysis: as Plaintiff concedes, ECF No. 14 at 15, it is counterintuitive today to treat a text as anything other than a "text," which underscores how much *more* foreign it would have been in 1991 to refer to a written, non-voice message as a "telephone call"—particularly one that can be received over the internet on a device that is not a phone. That reinforces the contemporaneous meaning *CVS* and *Blackstone* apply.

The post-*McLaughlin* authorities Plaintiff cites, by contrast, fail to apply the required analysis. They demonstrate precisely what § 227(c)(5) does not permit: each ignores Congress's deliberate use of "telephone call," relies on post-enactment or § 227(b) definitions, and elevates agency assumptions over the plain meaning that governs after *McLaughlin*. For example, *Wilson v. Medvidi Inc.*, relied on a 2024 edition of Black's Law Dictionary and *Satterfield*'s § 227(b) analysis, then exported that definition across the statute without grappling with the distinct term, "telephone call" in § 227(c)(5), or the interpretive canons discussed above. *See* 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025).[1] Similarly, *Skopos* held that "the FCC has **expanded** the TCPA to apply to text messages," 2025 WL 2029274, at *4,

---

[1] The others suffer from the same structural flaws. *See Mujahid v. Newity, LLC,* 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025) (relying on *Satterfield*'s 227(b) analysis and a 2002 Webster's dictionary); *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4–5 (D. Or. July 21, 2025) (relying on *Satterfield*'s 227(b) analysis); *Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *2 (S.D. Cal. Nov. 24, 2025) (same); *Wilson v. Better Mortg. Corp.*, 2025 WL 3493815, at *1 (S.D.N.Y. Dec. 5, 2025) (relying on Section 227(b) caselaw and elevating the perceived purpose over the plain language).

4

thereby "implicitly recognizing that the language of § 227(c)(5) itself does not include text messages." *Dilanyan,* 2025 WL 3549868, at *2. These opinions mirror Plaintiff's imprecise approach and suffer from the same defects: they treat modern usage and agency assumptions as controlling, ignore the structural and remedial differences between Sections 227(b) and 227(c), and bypass the ordinary-meaning analysis that *McLaughlin* now requires.

Plaintiff asks the Court to construe the term "telephone call" to accommodate new technologies, analogizing it to the term "vehicle" and today's electric cars. ECF No. 14 at 13–15. Her analogy strains credulity. Congress did not use an open-ended umbrella term like "communication"—the corollary to "vehicle"—for the DNC private action. It chose the narrower phrase "telephone call," while elsewhere using broader formulations—like "call or message" in § 227(a)(4). When Congress sweeps broadly, it says so. When it distinguishes among modes of communication, it says that. Courts must give effect to those textual choices. Congress easily could have defined § 227(c)(5)'s trigger in such technology-neutral terms. Instead, it chose the familiar, narrower phrase "telephone call," which was contemporaneously (and now) uniformly understood to mean a live, voice conversation over the telephone.

For that same reason, Plaintiff's attempt to distinguish *Facebook, Inc. v. Duguid* fails. 592 U.S. 395 (2021). She maintains that the term "call," unlike "autodialer," is broad enough to evolve. ECF No. 14 at 14 n.8. That's what the *Duguid* plaintiff argued and the Court rejected. 592 U.S. at 408–09. But more importantly, that's not even the question at issue. It's whether "telephone call"—the term used—is broad enough to encompass text messages. It's not, and that's why Congress and several states amended their telemarketing laws to address text messages separately, confirming "telephone call" did not encompass those communications. ECF No. 9-1 at 7.

5

Ultimately, Plaintiff's appeal to technological evolution confuses application with meaning. Courts may apply fixed terms to new factual contexts, but they may not alter those terms to cover entirely different modes of communication. The decisions she cites apply an undisputed original meaning to new factual settings; they do not alter Congress's words. In *Wisconsin Central Limited v. United States*, for example, the court refused to stretch "money remuneration" to reach stock options, explaining that "the problem with [that] position . . . is not that stock and stock options weren't common in 1937, but that they were not then—and are not now—recognized as mediums of exchange." 585 U.S. 274, 284 (2018). So too here. The question is not whether Congress in 1991 anticipated text messaging; it is whether "telephone call" then included written messages. It did not. *Cf.* 47 U.S.C. § 227(b)(1)(A) (tying "any call" to a number "assigned to a paging service[.]").

### C. The Court Cannot Substitute "Any Call" For "Telephone Call."

Having failed to expand the meaning of "telephone call" on its own terms, Plaintiff next attempts to import broader language from a neighboring subsection. She suggests that the Court treat the term "any call," in § 227(b) as interchangeable with "telephone call" in § 227(c)(5). ECF No. 14 at 8–9. But her reading runs contrary to the consistent-usage canon she purports to invoke. While "***identical*** words used in different parts of the same statute" are presumed to have the same meaning, "differences in language" are presumed to have "differences in meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85–86 (2017) (emphasis added). Naturally, "telephone call" is not identical to "any call," so consistent usage cuts against Plaintiff's argument, confirming the Court must apply a different, narrower meaning to Section 227(c)(5) than 227(b).

The structural differences between Sections 227(b) and 227(c) confirm that Plaintiff's proposal is inappropriate. Section 227(c)(5) retains a settled, voice-

6

focused meaning fixed in 1991 and still in use today. Section 227(b), by contrast, creates a separate remedy keyed to a broader phrase, "any call" made with specified equipment or prerecorded content. 47 U.S.C. § 227(b)(3).

The damages structure between the two sections reinforces that distinction. Section 227(b) imposes mandatory per-violation liability of $500 for "any call" (or $1,500 for willful violations), and specifically ties *that phrase* to include things like communications to pagers. 47 U.S.C. § 227(b)(1). Section 227(c)(5), by contrast, provides no private action unless a person first receives "more than one telephone call within any 12-month period," and only then permits an award "up to" $500 (or up to $1,500 for willful violations) per violation of the DNC regulations. *Id*. § 227(c)(5). And § 227(c)(5)'s private action is subject to a safe harbor, whereas § 227(b) has no such defense. 47 U.S.C. § 227(c)(5)(C). Congress thus created a remedial scheme that applies only after repeated "telephone call[s]" and gives courts discretion in setting damages; it did not design a per-communication regime for any message sent to a phone number. Treating "telephone call" in § 227(c)(5) as coextensive with § 227(b)'s "any call" would collapse those distinct structures.

Because of the differences between Sections 227(b) and (c), Plaintiff's pager analogy (ECF No. 14 at 8) undermines her analysis. As a matter of ordinary speech, no one in 1991 would say "I just got a telephone call on my pager," any more than someone today would describe a text or push notification as a "telephone call." But Congress included that communication by using the expansive phrase "any call" and explicitly tying it to "any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1). Congress thus knew exactly how to reach non-voice traffic to a device associated with a telephone number when it wanted to, and it did so explicitly in Section 227(b). By contrast, there is no similar language in the DNC private action, confirming that "telephone call" in § 227(c)(5) does not sweep in text messages.

7

Thus, the cases Plaintiff relies on (ECF No. 14 at 8–9), analyzing "any call" in the § 227(b) context, are irrelevant to the question at hand. *See, e.g.*, *Ashland v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 742 (6th Cir. 2013) (addressing the term "any call," finding it means a "direct communication between two parties—the caller and the caller's intended recipient."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009) (holding that a text message is a "call" under § 227(b)). Indeed, multiple courts that extended liability to text messages acknowledged that the plain meaning of "telephone call" <u>does not</u> support that reading, even though they were compelled to follow precedent in their Circuit. *See Piet v. Office Depot, LLC*, No. 9:24-cv-81488-WPD, at 5 (S.D. Fla. Nov. 25, 2025) (ECF No. 35-1) (recognizing that "interpreting the TCPA on a blank slate under ordinary principles of statutory interpretation," the Court "would tend to agree with the district courts who have determined that a call does not include a text message."); *Dilanyan,* 2025 WL 3549868, at *2–3 (acknowledging "*Satterfield* may not apply" to Section 227(c)(5), and certifying interlocutory appeal). *Ashland*, of course, did not address text messages, so the Court is not bound here.

### D. The Perceived Purpose of Section 227(c) Doesn't Override Its Plain Text.

Unable to justify her textual argument, Plaintiff next points to the structure of the TCPA, arguing that the purpose of Section 227(c) justifies expanding "telephone call," so that a violation of those regulations will always give rise to a private cause of action. ECF No. 14 at 9–11. But the plain language does not support that reading.

Plaintiff argues that because § 227(a)(4) defines "telephone solicitation" to include "a telephone call or message," the term "telephone call" in § 227(c)(5) must likewise include both. *Id.* at 10. That conflates two different functions. Section 227(a)(4) defines the universe of communications the FCC may regulate; it does not

8

define the scope of Congress's private right of action.[2] *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress . . . . [A] cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). While Plaintiff may believe it's an "odd result," ECF No. 14 at 18, Congress often gives agencies broader regulatory latitude than private plaintiffs.[3] In fact, many TCPA provisions contain no private right of action, including the technical standards for prerecorded calls, caller identification, information sharing, and robocall blocking. *See* 47 U.S.C. §§ 227(d)–(e), (i)–(j). As a parallel example, the FTC's TSR (which overlaps with the TCPA in many ways) sweeps broadly at the regulatory level but authorizes private suits only for a narrow band of conduct: "pattern or practice" violations causing "actual damages" of over $50,000 to the plaintiff. 15 U.S.C. § 6104(a). Regulators may therefore police a wide range of telemarketing activity, but private enforcement is reserved for only the most substantial injuries.

Congress took the same approach here: § 227(a)(4) permits the FCC to regulate calls or messages, while § 227(c)(5) allows private suits only for "telephone call[s]." *CVS* confirms the point: "however Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" 2025 WL

---

[2] As *CVS* acknowledged, the fact that Congress used the broader "telephone call or message" in § 227(a)(4) "shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" 2025 WL 2491195, at *2

[3] Plaintiff's suggestion that the telephone solicitation focuses on content rather than form is likewise unfounded. ECF No. 14 at 10. *Hulce v. Zipongo Inc.*, addressed a very different question: whether ordinary, live-voice telephone calls were "telephone solicitations" because of their content, not whether a text message is a "telephone call." 132 F.4th 493, 497 (7th Cir. 2025).

9

2491195, at *2. A definitional provision used to frame agency rulemaking cannot silently rewrite the narrower remedial trigger.

For the same reason, Plaintiff's reliance on § 227(c)(3)(F) is misguided. ECF No. 14 at 9–10. That section directs the FCC to regulate "making or transmitting a telephone solicitation to the telephone number of any subscriber[.]" That provision again speaks only to what the FCC may regulate; it does not define or expand the conduct that supports a private suit under § 227(c)(5).

### E.     The FCC Has No Authority to Rewrite the TCPA.

Plaintiff argues that because Congress delegated authority to the FCC to enact regulations under § 227(c)(1), it should be allowed to expand the term "telephone call" in § 227(c)(5). ECF No. 14 at 22–23. Again, Congress delegated authority to the FCC to regulate telemarketing practices, not to redefine who may file suit.

Even if the FCC concluded that the private cause of action in § 227(c)(5) applies to text messages, which it didn't, that opinion would be wrong and would not enlarge Congress's private action. *See Alexander*, 532 U.S. 275, 286–87. After *McLaughlin* and *Loper Bright*, courts must "independently determine" the TCPA's meaning; agency interpretations receive—at most—nonbinding respect. 606 U.S. at 155, 168–69; 603 U.S. at 388–89. The required reading of § 227(c)(5) is the one that honors Congress's deliberate use of the narrower phrase "telephone call" for the DNC private action, as opposed to the broader language used elsewhere in the TCPA. Plaintiff ignores this, attempting to sweep written communications that anyone alive in 1991 (or now) knows are not "telephone calls" under Section 227(c)(5). That is statutory revision, not construction.

The history of direct APA challenges to the FCC's TCPA rulings confirms the Court's obligation to follow the plain text. Even before *McLaughlin* and *Loper Bright*, courts invalidated FCC rulings when the rulings ignored the TCPA's plain language. ECF No. 9-1 at 9–10. Plaintiff does not address this history, nor does she

10

explain why FCC views should be given greater deference here than in those cases—particularly given they were decided under the now-defunct *Chevron* framework.

Even more so now, under the *McLaughlin* and *Loper Bright* framework, the FCC's assumptions about § 227(c)(5) matter only insofar as they reflect the ordinary 1991 meaning of "telephone call." As the post-*McLaughlin* decisions confirm, they do not. Those cases each interpret § 227(c)(5) independently, consult contemporaneous dictionaries and usage, and hold that the term "telephone call" does not encompass text messages. *See CVS*, 2025 WL 2491195, at *1–4; *Blackstone*, 792 F. Supp. 3d at 899-900; *Naturopathica*, 2025 WL 2997759, at *2. *CVS* makes the point explicit in this precise context: "even assuming that the FCC has interpreted 'telephone calls' in § 227(c)(5) to include text messages, 'appropriate respect' for that conclusion would not require a different outcome" where the ordinary meaning of the statute says otherwise. 2025 WL 2491195, at *4 & n.1.

### F.    Alternatively, the Court Should Certify This Question for Immediate Interlocutory Appeal.

If the Court concludes that text messages are actionable under § 227(c)(5), it should certify its order for interlocutory appeal. The Court may do so where the order involves "[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Each requirement is met here.

First, whether text messages are actionable under Section 227(c)(5) is a controlling and purely legal question. Plaintiff doesn't dispute that the communications at issue are limited to text messages, so no factual development is needed to resolve the statutory question presented.

Second, there is substantial ground for difference of opinion. The question presented—whether text messages fall within the plain meaning of "telephone call"

11

under § 227(c)(5) in light of *Loper Bright* and *McLaughlin*—is a novel one under the current interpretive framework. As the parties' briefing reflects, courts have already reached differing conclusions on this issue. *See In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) ("[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal[.]").

Finally, immediate appellate review could materially advance the termination of this litigation. If text messages are not actionable, Plaintiff has no claim. Moreover, the same issue is currently being litigated in at least three of Plaintiff's cases pending before this Court. *See Soboleski v. MCM Products USA Inc.,* No. 25-cv-11699, ECF 8 (E.D. Mich.); *Soboleski v. Michael Kors (USA), Inc.*, No. 25-cv-11838, ECF 12 (E.D. Mich.). Resolving this controlling legal question now would conserve judicial resources, reduce the risk of inconsistent rulings, and materially advance the efficient resolution of these proceedings.

### III.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice or, at a minimum, certify the question of whether telephone calls include texts under Section 227(c) to the Sixth Circuit.

Dated: December 22, 2025         Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Tel: (404) 782-0695
ryan@wtlaw.com
*Counsel for Defendant*

12


## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

                                              By: /s/ *Ryan D. Watstein*
                                                 Ryan D. Watstein