

**User Name:** Anthony Paronich

**Date and Time:** Thursday, April 2, 2026 11:09 AM EDT

**Job Number:** 280364225

## Document (1)

1. *Wilson v. Easy Spirit, LLC*

   **Client/Matter:** -None-

   **Search Terms:** Easy Spirit Wilson

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

Anthony Paronich

No *Shepard's* Signal™
As of: April 2, 2026 3:09 PM Z

## *Wilson v. Easy Spirit, LLC*

United States District Court for the District of Connecticut

March 31, 2026, Decided; March 31, 2026, Filed

No. 3:25-CV-112 (SFR)

**Reporter**

2026 U.S. Dist. LEXIS 69059 *; 2026 LX 189774

CHET MICHAEL *WILSON*, Plaintiff, v. *EASY SPIRIT*, LLC, Defendant.

## Core Terms

text message, telephone, residential, private right of action, subscriber, notice, cell phone, telephone call, phone, caller id, registry, message, landline, legislative history, reply, violation of a regulation, telephone solicitation, motion to dismiss, plain meaning, dictionary, spoofing, motion to strike, technology, prescribe, cellular

**Counsel:** **[\*1]** For Chet Michael *Wilson*, individually and on behalf of all others similarly situated, Plaintiff: Anthony Paronich, LEAD ATTORNEY, Paronich Law, P.C., Hingham, MA.

For *Easy Spirit*, LLC, Defendant: Tony Miodonka, LEAD ATTORNEY, Finn Dixon & Herling LLP, Stamford, CT; Lea Dartevelle, PRO HAC VICE, Christine A. Montenegro, Kasowitz LLP, Accounting, New York, NY.

**Judges:** SARAH F. RUSSELL, United States District Judge.

**Opinion by:** SARAH F. RUSSELL

## Opinion

### MEMORANDUM & ORDER

Chet Michael *Wilson* filed this putative class action lawsuit under the Telephone Consumer Protection Act ("TCPA") against *Easy Spirit*, LLC ("*Easy Spirit*"). First Am. Compl., ECF No. 24 ("FAC"). The TCPA provides a private right of action to persons who "received more than one telephone call" within a 12-month period from an entity in "violation of the regulations prescribed under" the statute. *47 U.S.C. § 227(c)(5)*. *Wilson* alleges *Easy Spirit* sent him unwanted text messages in violation of a regulation that precludes calls to those registered on the Do Not Call Registry. ECF No 24 ¶¶ 36-37 (citing *47 C.F.R. § 64.1200(c)(2)*).

*Easy Spirit* has moved to dismiss, asserting that: (1) the TCPA protects only "residential telephone subscribers," and a cell phone subscriber is not included in that definition; and (2) the TCPA private right of action **[\*2]** allows suit by those who receive unsolicited "telephone calls," which does not include the text messages received by *Wilson*.[1] Def.'s Mot. to Dismiss, ECF No. 27-1, at 1.

For the reasons described below, I reject both arguments and thus deny the motion to dismiss.

### I. BACKGROUND

#### A. Factual Background

*Wilson* has a cellular phone ("cell phone") that he uses for household purposes and does not have a

---

[1] Counsel confirmed at oral argument that the complaint alleges only that *Wilson* received text messages, and not voice calls, from *Easy Spirit*. ECF No. 72, at 52-53.

landline telephone in his home. FAC ¶¶ 9-12. *Wilson* uses his cell phone for personal use as one would use a landline telephone in a home and is not reimbursed by any business for his cell phone plan. *Id.* ¶¶ 13-15. *Wilson* registered his number on the National Do Not Call ("DNC") Registry at least 30 days prior to receiving the communications alleged in the First Amended Complaint. *Id.* ¶ 16.

*Easy Spirit* delivered or caused to be delivered text messages to *Wilson*'s cell phone in 2024 and 2025, thirty-one or more days after *Wilson* registered his telephone with the DNC Registry. *Id.* ¶¶ 18-20. *Wilson* further alleges that the purpose of these text messages was to advertise and market *Easy Spirit*'s business or services. *Id.* ¶ 22. *Wilson* also alleges that *Easy Spirit* routinely violates the TCPA in ways described **[*3]** as to him and as to members of the putative class. *Id.* ¶ 27.

**B. Procedural History**

*Wilson* commenced this putative class action on January 22, 2025. ECF No. 1. On April 12, 2025, *Wilson* filed the FAC, ECF No. 24, which contains one cause of action. Count One asserts that *Easy Spirit* violated the TCPA, *47 U.S.C. § 227*, by sending unsolicited text messages to *Wilson*. FAC ¶¶ 35-40.

*Easy Spirit* filed a Motion to Dismiss the Amended Complaint and accompanying memorandum of law on April 28, 2025. ECF No. 27; Def.'s Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 27-1. *Wilson* responded on April 29, 2025. Pl.'s Resp. Opp. to Def.'s Mot. to Dismiss. ECF No. 28. *Easy Spirit* filed a reply in further support of its Motion to Dismiss on May 13, 2025. ECF No. 30.

In the wake of the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025)*, the parties filed further briefings. On July 25, 2025, *Easy Spirit* filed the Supplemental Memorandum in Support of the Motion to Dismiss. ECF No. 42. On August 3, 2025, *Wilson* responded. ECF No. 44.

On August 12, 2025, *Easy Spirit* filed a Reply . ECF No. 45. *Wilson* filed a Response on September 5, 2025. ECF No. 51. I issued an order staying discovery pending my decision on the Motion to Dismiss on October 20, **[*4]** 2025. ECF No. 58.

The parties have also filed a number of notices of supplemental authority noting other cases where courts throughout the country have grappled with similar issues. ECF Nos. 31, 52, 64, 65, 66, 67, 69, 70, 74, 75,76, 77, 78, 80, 81, 84, 85, 86. *Easy Spirit* has also filed a motion for leave to file a reply to *Wilson*'s notice of supplemental authority, and motions to strike some of those notices. ECF Nos. 71, 79, 82. The court previously addressed some of those motions, ECF No. 60, but ECF Nos. 71, 79, and 82 remain pending.

**II. LEGAL STANDARD**

The standard that governs motions to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*; *Kim v. Kimm, 884 F.3d 98, 103 (2d Cir. 2018)*; *Lapaglia v. Transamerica Cas. Ins. Co., 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016)*. Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678*. The court must "draw all reasonable inferences in [the plaintiff's] favor, 'assume all well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011)*. However, the court is **[*5]** not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman, 517 F.3d 140, 149 (2d Cir. 2008)*.

**III. DISCUSSION**

Congress passed the TCPA in 1991 to combat

"[u]nrestricted telemarketing," which Congress found was "an intrusive invasion of privacy" and "a risk to public safety." *Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394 (1991)* (legislative findings). In the TCPA, Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime" administered by the Federal Communications Commission. *Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 383 (2012)*.

A key mechanism established in the TCPA is the nationwide "Do Not Call" ("DNC") registry, which allowed the FCC to establish a list of phone numbers of "residential telephone subscribers who object to receiving telephone solicitations." *47 U.S.C. § 227(c)(3)*. The TCPA prohibits telemarketers from "making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the DNC] database." *Id.* § 227(c)(3)(F). Telephone solicitations are defined as

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's **[*6]** prior express invitation or permission . . .

*Id.* § 227(a)(4). The statutory provisions of the TCPA further provide a private right of action related to the DNC registry, permitting

> [a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . if otherwise permitted by the laws or rules of court of a State [to] bring in an appropriate court of that State—
>
>> (A) an action based on the violation of the regulations prescribed under this subsection to enjoin such violation,

>> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

>> (C) both such actions.

*Id.* § 227(c)(5). Although the TPCA does define "telephone solicitation," it does not explicitly define "telephone call" or "residential subscriber" for the purpose of the statute.

The FCC regulations promulgated under the TPCA further provide that "[n]o person or entity shall initiate any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the [DNC registry]." *47 C.F.R. § 64.1200(c)(2)*.

*Wilson* brings his Amended **[*7]** Complaint under the private right of action established by *47 U.S.C. § 227(c)(5)*. FAC ¶¶ 1-2. *Easy Spirit* argues that the private right of action does not apply because cell phones are not covered by the TCPA's provisions for "residential telephone subscribers." *Easy Spirit* further argues that a "text message" is not a "telephone call" for the purpose of the private right of action. I address both arguments in turn.

## A. *Wilson* is a "Residential Telephone Subscriber"

First, as to *Easy Spirit*'s argument that *Wilson* is not a "residential telephone subscriber" because the relevant number was a cell phone and not a landline, I find this argument unavailing.

In his Amended Complaint, *Wilson* describes his cell phone as his "residential number." FAC ¶ 9-10. He alleges that he "does not have a landline telephone number in his home," "uses his cellular phone number for personal use only as one would use a landline telephone number in a home," and is not reimbursed by a business for his cell phone plan. *Id.* ¶¶ 12-15.

I note that *Easy Spirit* cites no binding precedent

distinguishing "residential land line telephone numbers from cell-phone numbers" for the purpose of the TCPA, *see* ECF No. 27-1, at 11-14, nor has *Wilson* **[*8]** cited binding precedent to the contrary. *Easy Spirit* argues that the Supreme Court has twice held that "residential" and "cellular" are oppositional terms, but the cited cases explicitly do not use this terminology. In *Facebook, Inc. v. Duguid*, the Supreme Court placed "home phones and cell phones" in opposition—the word "residential" does not appear even once in the opinion, and the Court was simply describing different kinds of phones to which the TCPA applies, not purporting to interpret whether Congress intended to exclude cell phones from the word "residential." *592 U.S. 395, 409 (2021)*. In *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, Justice Gorsuch's concurrence explicitly uses the phrase "residential landlines," contrasting this more generally with "cell phones," but not defining "residential" as to exclude cell phones. *591 U.S. 610, 648 (2020)* (Gorsuch, J., concurring). Neither of these cases creates an exclusive category separating "residential" and "cell phones." Without clear guidance from the Supreme Court or Second Circuit on this issue, I consider the merits of the question and view authority cited by the parties as persuasive rather than binding.

*Easy Spirit* argues that Congress has recognized a distinction between **[*9]** landlines and cell phones in the TCPA and beyond, and that Congress therefore intended to define "residential subscribers" in opposition to "cellular phone subscribers." *See* ECF No. 27-1, at 11-12. But I need not reach legislative intent or arguments from silence to resolve this issue. I note that the plain language of the statute does not specify what a "residential" number is, and there is no indication that the definition is tied to a particular telephonic technology. As another District Court persuasively argued:

> A "subscriber" is a "person who makes a regular payment in return for . . . access to a commercially provided service." *Subscriber*,

Oxford English Dictionary, https://www.oed.com (2025). The term "residential" modifies "subscribers," meaning that the TCPA applies to a certain type of phone *subscriber* rather than to a particular type of phone *technology*. The ordinary definition of "residence" is the "act or fact of living in a given place for some time." *Residence*, Black's Law Dictionary (12th ed. 2024). Thus, applying the ordinary definition of "residential" to the term "subscriber," a "residential subscriber" is a person who maintains a phone for the purposes of their **[*10]** private residence rather than for commercial or business purposes. In other words, a residential subscriber is a person who uses their phone for activities associated with their private, domestic life.

*Isaacs v. USHealth Advisors, LLC, 24-cv-00216-LMM, 2025 WL 2268359, at *3 (N.D. Ga. Aug. 7, 2025)* (cleaned up). I find this reasoning, based on the plain meaning of the statutory text and not on deference to any agency interpretation, persuasive. I also note that the plain language of the statute does not, at any point, equate "residential telephone" with "landline." Thus, "[c]onsistent with numerous courts who have addressed this issue, I find that a 'residential subscriber' is not limited to a residential landline but rather can include a person who uses a cell phone for personal use." *Cole v. C/T Install Am., LLC*, No. 25-3531, slip op. at 1 n.1 (E.D. Pa. Mar. 23, 2026) (collecting cases).[2]

---

[2] Some courts have held that cell phone subscribers are not "residential subscribers" under the TCPA. *See Moore v. Triumph CSR Acquisition, LLC, No. 23-cv-4659, 2023 WL 8601528, at *2-3 (N.D. Ill. Dec. 12, 2023)* ("Some people practically take up residence on their cell phones. But even the strongest addiction to a cell phone cannot transform it into a residential phone. A residential phone is a home phone that is hard-wired into the building. It means a land-line."); *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd., 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022)*. However, I find the contrary reasoning more persuasive. *See, e.g., Radvansky v. 1-800 Flowers.com, Inc., No. 25-CV-2811-TWT, 2026 WL 456919, at *3-4* (denying motion to dismiss because "the fact that the solicitations to a telephone number on the do-not-call registry came to a cellular telephone does not preclude Plaintiff's claim for a violation of the

## B. Text Messages are "Telephone Calls" Under the TCPA

*Easy* *Spirit* also argues that "the plain language of § 227(c)(5) confers a private right of action solely for the receipt of 'telephone calls,' not text messages." ECF No. 27-1, at 14. *Easy* *Spirit* argues both that the plain meaning of "call" precludes text messages, and that Congress's failure to add the phrase "text message" to the private right of action in the 2018 TCPA Amendments show that Congress intended to exclude **[*11]** text messages from the private right of action. *Id.* 14-15. *Wilson* responds that I should consider the definition of "telephone solicitation" in § 227(a), which includes the term "messages," as applicable to the private right of action at § 227(c)(5). ECF No. 28, at 15-16. *Wilson* also argues that even if I consider only the definition of "telephone calls" under § 227(c)(5), that definition includes text messages under both a plain reading and pursuant to previous FCC interpretations of the statue. *Id.* at 16-19.[3]

The TCPA provides that:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection

may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State

> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

*47 U.S.C. § 227(c)(5)*. As an initial matter, pursuant to the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)*, and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025)*, I **[*12]** note that I will not defer to the FCC's 2003 decision that a text message should be treated as a "call" under the TCPA, *see In Re Rules & Regs. Implementing the TCPA, 18 FCC Rcd. 14014, 14115 (2003)* ("[The TCPA] encompasses both voice calls and text calls to wireless numbers . . . "); *47 C.F.R. § 64.1200(e)* (applying the 2003 FCC ruling to the do-not-call restriction in § 64.1200(c)). Instead, I "determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation," *McLaughlin, 606 U.S. at 155*.

### 1. Plain Meaning of the Text

I first examine the text of the TCPA, interpreting the words with their "ordinary, contemporary, common meaning." *Perrin v. United States, 444 U.S. 37, 42 (1979)*. The plain language of § 227(c)(5) applies only to "[a] person who has received more than one telephone call." *47 U.S.C. § 227(c)(5)*. As other courts have found, the relevant definition of "call" in Webster's Dictionary from the time of the TCPA's passage in 1991 defines "call" as "to get or try to get into communication by telephone." *Cole, No. 25-3531, at 1 n.1* (quoting

---

TCPA") (quoting *Radvansky v. Bubolo Med., LLC, No. 24-cv-04365-SCJ, 2025 WL 3306417, at *2 (N.D. Ga. Aug. 15, 2025)*).

[3] I note that this issue has split the federal courts. *Compare, e.g., Wilson v. Better Mortg. Corp., 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025)* ("The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons . . . . In brief, although modern parlance tends to distinguish between phone calls and text messages, the meaning of "telephone call" in 1991—when the TCPA was enacted—was broad enough to encompass text messages.") *and Mey v. Liberty Home Guard, LLC*, No. 23-CV-281, 2026 WL 486556, at *6-7 (N.D.W. Va, Jan. 5, 2026) (same) *with Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899-902 (C.D. Ill. 2025)* (finding that § 227(c)(5) does not apply to text messages) *and Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025)* (same). Neither party directs me to binding Supreme Court or Second Circuit precedent. I thus view these cases as persuasive authority and conduct my own independent statutory interpretation analysis.

Webster's Ninth New Collegiate Dictionary 197 (1990)). Other contemporary dictionaries use similar definitions. *See* Webster's Third New World Dictionary 198 (1988) ("[T]o communicate with by telephone").

The contemporary ordinary meaning of the word "call" is therefore not limited to a voice call. **[*13]** Call, in this context, means to "get or try to get into communication" using a telephone. A text message is sent using a cellular telephone to "get or try to get into communication" with another person. The TCPA was passed before the first text message was sent on December 3, 1992, *Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 370 (6th Cir. 2015)*, and thus Congress was not specifically contemplating text messages when it enacted the private right of action at § 227(c). But, as other district courts have found:

> [T]he fact that text messages had not yet been invented when Congress wrote the TCPA does not foreclose that it intended for the statute to cover future technology. To the contrary, the Second Circuit has recognized, as to § 227(b), that "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA"— notwithstanding that that mode of telephone communication did not yet exist. *Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019).* That text messages did not exist when Congress enacted the TCPA also explains why Congress did not refer specifically to that technology, instead using the broader term "telephone call." *See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998)* ("As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does **[*14]** not demonstrate ambiguity. It demonstrates breadth.'" (quoting *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985)*)).

*Wilson v. Better Mortgage Corp., 811 F. Supp. 3d*

*631, 638 (S.D.N.Y. 2025)* (cleaned up).[4] I agree with this reasoning, and therefore find that a text message is a "telephone call" for the purpose of the private right of action under § 227(c)(5).

**2. 2018 Amendment to the TCPA**

To rebut the plain meaning of the Act, *Easy Spirit* attempts to shift the "contemporary" timeframe relevant to the "ordinary, *contemporary*, common meaning," *see Perrin, 444 U.S. at 42*, from the original passage of the TCPA in 1991 to an Amendment of the TCPA in 2018. To do so, *Easy Spirit* notes correctly that although the TCPA contains multiple references to text messages, added in the 2018 Amendments, the private right of action under § 227(c)(5) was not similarly amended at that time to include text messages. ECF No. 27-1, at 14-15; ECF No. 72, at 6. On the basis of this observation, *Easy Spirit* declares that "[w]here Congress intended to regulate text messages, it did so expressly and separately from telephone calls." ECF No. 27-1, at 14. At oral argument, *Easy Spirit* repeatedly referenced Congress's 2018 Amendments to the TCPA, which include eleven different uses of the term "text message," and argued that this was evidence that "Congress simply chose not to extend **[*15]** th[e] private right of action to written text messages when it amended the statute in 2018." ECF No. 72, at 17. While at least one other court has agreed with this argument, *see Radvansky v. Kendo, No. 23 cv-00214-LMM, 2026 WL 810929, at *2 (N.D. Ga. Feb 12, 2026)*, I conclude *Easy Spirit*'s reliance on legislative silence in this instance is misplaced.

The Supreme Court has instructed that a "familiar principle of statutory construction . . . is that a

---

[4] As discussed above, the Second Circuit has also recognized that a "call" under § 227(b) covers text messages. *Melito, 923 F.3d at 88*. Cases concluding that "call" in a neighboring provision of the statute includes text messages, although not dispositive, suggest that the structure of the TCPA supports the understanding that text messages should be included within the phrase "telephone call" for the purpose of contemporary ordinary meaning.

negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld, 548 U.S. 557, 578 (2006)*; *see also Russello v. United States, 464 U.S. 16, 23 (1983)* ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"). This form of negative inference is strongest where the contrast was clearly deliberate—for example, where contrasting statutory sections were enacted simultaneously, or where they were drafted separately but were joined together and considered simultaneously. *See Lindh v. Murphy, 521 U.S. 320, 330-31 (1997)*; *Field v. Mans, 516 U.S. 59, 75 (1995)*; *Hamdan, 548 U.S. at 579-80*.[5]

---

[5] *Wilson* argues that the TCPA gives the FCC authority to prevent "telephone solicitations," and because § 227(a)(4) defines "telephone solicitation" as "a telephone call or message," the private right of action in § 227(c)(5) covers text messages. ECF No. 28, at 15-16. However, other courts have pointed to the definition of "telephone solicitation" as weighing against concluding that § 227(c)(5) includes text messages. *See Davis, 797 F. Supp 3d at 1274*; *Radvansky v. Kendo Holdings, Inc., 23-cv-00214-LMM, 2026 WL 810929, at *2 (N.D. Ga., Feb. 12, 2026)*.

I agree with these courts that "Congress's decision to use a different term 'in a neighboring provision only undermines [Plaintiff's] position' because '[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Radvansky, 2026 WL 810929 at *2* (quoting *Davis, 797 F. Supp. 3d at 1274*). But, unlike these courts, I conclude that the plain meaning of telephone call *does* include text message. That Congress had more than one category of telephonic communications in mind when it drafted the TCPA does not necessarily mean that text messages are not "telephone calls"— especially because, as the *Radvansky* court acknowledges, text messages were not invented until after the passage of the TCPA in 1991. *See Keating, 615 F. App'x at 370* (first text sent in 1992); *Radvansky, 2026 WL 810929 at *2* (acknowledging this argument and dismissing it on the basis of the 2018 TCPA Amendments). There is no reason that a text message, invented after the statute was enacted, cannot fit under the definition of both a "telephone call" and a "message." Thus, the fact that the definition of "telephone solicitation" lists a "telephone call" as distinct from a "message" does not mean a text message is not a "telephone call."

It is logical that § 227(c)(5) does not provide a private right of action to a "person who has received more than one telephone call or

This is not a case where the legislative history warrants any such conclusion. *Easy Spirit* asserted at oral argument that "Congress amended **[*16]** the statute extensively in 2018 to include the term 'text message,'" that Congress was "very purposeful" when it did so, and that it "simply chose not to extend th[e] private right of action to written text messages when it amended the statute in 2018." ECF No. 72, at 6, 15, 17. But the 2018 Amendments to the TCPA were not a wide-ranging revision of the TCPA, nor were they targeted in any way at the DNC registry or the related private right of action. In other words, no such "purposeful" action by Congress can be assumed.

Instead, the 2018 Amendments, which added various mentions and a definition of "text message" to the TCPA, were the result of legislation targeting a completely different problem than the concerns targeted by the DNC registry, suggesting that Congress did not have the DNC registry or the private right of action in view when it amended the statute.

The 2018 Amendment was passed into law as part of H.R. 1625, the Consolidated Appropriations Act of 2018. *Pub. L. No. 115-141, § 503, 132 Stat. 348, 1091 (2018)*. The specific provisions relevant here were identical to those in H.R. 423, the Anti-Spoofing Act of 2017, H.R. 423, 115th Cong. (2017), which was subsequently included in the RAY BAUM'S Act of 2018 (the FCC reauthorization bill), H.R. 4986, 115th Cong., § 503 (2018), which was subsequently enacted by the

---

message" as this language could cover an instance where a business, on a single occasion, leaves a voicemail message after a person fails to pick up a ringing telephone. A text message is unlike a traditional voicemail message in that it is simultaneously both an attempt to communicate and the communication itself, whereas a traditional voicemail message necessarily follows after an attempt to communicate. In any case, I do not rest on this argument. Congress's exclusion of "message" from § 227(c)(5) does not persuade me that a text message does not fall within the definition of telephone call. Instead, I find that the plain meaning of telephone call does include text message as described above, and that the 2018 TCPA Amendments do not alter this analysis.

Consolidated Appropriations Act of 2018.[6]

The text of these three pieces of proposed legislation is substantively identical.[7] Therefore, although **[*17]** the Consolidated Appropriations Act of 2018 does not have relevant legislative history regarding the anti-spoofing provisions, I can instead look to the two unenacted bills, H.R. 423 and H.R. 4986, which do have relevant legislative history providing interpretive context for the exact language later signed into law.

The provision defining text messages was added to the unenacted 2015 version of the Anti-Spoofing Act, H.R. 2669, 114th Cong. (2015), and remained in subsequent versions of the proposed legislation until the language from the 2017 version of the bill was passed as part of the Consolidated Appropriations Act of 2018. *See Markup of H.R. 2566 and H.R. 2669, Subcommittee on Communications and Technology (September 12-13, 2016)*, Energy & Commerce Committee Democrats, 114th Cong. (Sept. 13, 2016) (statement of Rep. Barton) ("We've added a section on text-messaging and there still is some uncertainty about a legal definition of a 'text message,' which we hope to work out before we move this bill to full committee.").[8]

On January 23, 2017, the House passed the Anti-Spoofing Act of 2017 by a vote of 398 to 5. H.R. 423 - Anti-Spoofing Act of 2017, *Actions*, Congress.gov (accessed Mar. 28, 2026).[9] During consideration of the bill on the House floor, Rep. Grace Meng, the bill's lead sponsor, stated that

This legislation seeks to combat spoofing, which is when phone call recipients **[*18]** are tricked into answering the phone due to inaccurate caller ID information. Criminals have used this technique to scam thousands of Americans and steal millions of dollars. Recent spoofing attempts have included scam artists pretending to be sheriff's offices, hospitals, and even the IRS. The bill before us this afternoon expands spoofing protections to calls that originate outside of the country as well as text messages.

163 Cong. Rec. H578 (daily ed. Jan. 23, 2017) (statement of Rep. Meng). Rep. Marsha Blackburn, lead sponsor of the RAY BAUM'S Act of 2018 (which subsequently included the exact text of the Anti-Spoofing Act), described the purpose of the language about text messaging as addressing a loophole in the Truth in Caller ID Act of 2009, legislation codified within the TCPA[10] :

H.R. 423 would extend and clarify provisions of the Truth in Caller ID Act to include text messages and Voice over Internet Protocol services and would also apply the penalties to violators outside of the United States.

The bill would also seek to make it more challenging for those using fake caller ID information. In the past, you needed to have advanced skills and expensive equipment in order to spoof. Nowadays, it isn't hard. All someone needs to have is a **[*19]** smartphone and access to any of the various apps on the market that can instantly generate a fake caller ID.

*Id.* at H577 (statement of Rep. Blackburn). Cosponsor Rep. Michael Doyle also focused on the issue of false caller identification, saying that

Consumers should feel safe knowing that the caller ID information they see when they answer the phone is accurate. Unfortunately,

---

[6] The relevant provisions were codified in *47 U.S.C. § 227(e)*.

[7] H.R. 423 included a provision explicitly defining "Commission" to mean the "Federal Communications Commission," which was subsequently omitted from H.R. 4986 and *Pub. L. No. 115-141*. *See* H.R. 423, 115th Cong. § 2(e).

[8] https://democrats-energycommerce.house.gov/committee-activity/markups/markup-of-hr-2566-and-hr-2669-subcommittee-on-communications-and (embedded video), at 00:57:54.

[9] https://www.congress.gov/bill/115th-congress/house-bill/423/all-actions.

[10] The Truth in Caller ID Act of 2009 is codified at *47 U.S.C. § 227(e)*.

fraudsters use misleading caller ID numbers every day to trick consumers into handing over sensitive information.

Americans, from young people to senior citizens, are misled by crooks using a fake caller identification into thinking they are being connected to a trusted institution. This practice known as spoofing contributes to the millions of identity theft cases in our country each year and so many other forms of fraud. Under the law today, it is already illegal for scammers to use fake caller ID information for regular voice calls. This legislation expands that band to text messages and to calls coming in from overseas. That just makes sense.

*Id.* at H577 (statement of Rep. Doyle). Rep. Sheila Jackson Lee added that "H.R. 423, the Anti-Spoofing Act, will extend the provisions of the Truth in Caller ID Act to include **[\*20]** text messaging and text messaging services." *Id.* at H578 (statement of Rep. Jackson Lee).

Similarly, the House Energy and Commerce Committee Report about H.R. 4986, the RAY BAUM'S Act (which contained the language of H.R. 423), and the Senate Commerce, Science, and Transportation Report about S. 134, 115th Cong. (2017), the Senate companion to the H.R. 423, describe the purpose of the legislation as updating the Truth in Caller ID Act of 2009 to preventing "spoofing" from overseas actors and via text messaging services. S. Rep. No. 115-91, at 1-2 (2017); H.R. Rep. No. 115-587, pt. 1, at 32 (2018). These statements and documents do not discuss the DNC registry or the private right of action in any way,[11] nor do they suggest that any legislator involved in the drafting or passage of the legislative text purposefully chose not to include the phrase "text message" in the existing private right of action.

---

[11] I note that the House Report includes the phrases "private right of action" and "do not call," but only where it reproduces the text of the TCPA itself. *See* H.R. Rep. No. 115-587, pt. 1, at 70, 72, 161 (2018).

In other words, unlike the legislation at issue in *Hamdan* or *Lindh*, the private right of action provision in the 1991 legislation and the references to "text messages" in the 2018 Amendments were not considered "together at every stage," *Hamdan, 548 U.S. at 579*, or drafted separately but later "joined together and . . . considered simultaneously," *Lindh, 521 U.S. at 330* **[\*21]** . Instead, the legislative history of the 2018 Amendments contains no evidence that Congress discussed the impact of the proposed Amendments on § 277(c)(5) or considered the private right of action at all when it passed the 2018 TCPA Amendments. Congress was focused on a different problem in a different part of the statute. Its failure to amend § 277(c)(5) in 2018 therefore does not lead to a presumption "that Congress act[ed] intentionally and purposefully in the disparate . . . exclusion." *Russello, 464 U.S. at 23*. The evidence does not warrant any negative inference from the exclusion of "text messaging" in § 227(c)(5) in the 2018 Amendments, or at best warrants a weak inference that would be clearly contradicted by the plain meaning of the text as understood in 1991.

*Easy Spirit* does not cite or consider the legislative history in any depth, but simply asserts, as they did at oral argument, that "Congress was purposeful when it legislated" and that it "chose not to add" text messages to the private right of action. ECF No. 72, at 24-25. In its Proposed Reply to Plaintiff's Notice of Supplemental Authority, ECF No. 71-1, *Easy Spirit* urges the Court to "read together" the "provisions introduced by the amendatory act" with "the provisions of the original section that were . . . left unchanged as if they had been originally enacted as one section." ECF No. 71-1, at 4 (quoting *Am. Airlines, Inc. v. Remis Indus., Inc., 494 F.2d 196, 200 (2d Cir. 1974)*). But the court in *Remis* noted that "[n]o legislative history could be found to illuminate congressional intent" as to the meaning of the statutes at issue in that case. Here, ample legislative evidence shows the contrary: Congress evinced no purpose or intention as to § 277(c)(5) when it passed the 2018 **[\*22]** Amendment.

I therefore reject *Easy Spirit*'s argument that the legislative history of the 2018 Amendment should override the plain meaning of the text and instead apply the ordinary contemporary meaning of the phrase "telephone call" at the time of enactment in 1991.

## IV. MOTIONS TO STRIKE AND MOTION FOR LEAVE TO FILE A REPLY

Also pending before me are two Motions to Strike Plaintiff's Notices of Supplemental Authority. First, *Easy Spirit* moves to strike the Notice of Supplemental Authority, ECF No. 76, filed on January 28, 2026 and a corrected Notice, ECF No. 77, because the Notices misidentified *Alvarez v. Fiesta Nissan Inc.*, a case in the Southern District of Texas, as a case in the Southern District of New York, ECF No. 79 at 1-2. *Easy Spirit* also moves to strike another Notice of Supplemental Authority, ECF No. 81, which it alleges is, "in substance, an unauthorized supplemental brief that improperly presents arguments and legal conclusions concerning authority issued after the parties' oral argument and briefing on Defendant's Motion to Dismiss the Amended Complaint . . . has concluded." ECF No. 82, at 1.

"[I]t is fairly standard practice for parties to occasionally send letters or **[\*23]** to otherwise file supplemental authority after briefing is complete." *Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427 (NGG) (ST), 2016 WL 4617159, at \*7 (E.D.N.Y. Sept. 2, 2016)*. A notice of supplemental authority can be filed without leave of court so long as it does not submit new arguments or otherwise prejudice the filer's adversary. *See DeSimone v. Select Portfolio Servicing, Inc., No. 20-CV-3837 (PKC) (TAM), 2023 WL 6450236, at \*4 (E.D.N.Y. Sept. 30, 2023)* (applying this standard in denying motion to strike purportedly irrelevant notice of supplemental authority without leave of court).

Although *Wilson*'s citation to *Alvarez* did indeed misidentify that case, I was not confused by the reference, and *Alvarez*, a publicly available case in another district, is a proper subject of judicial notice and persuasive authority. As to the second motion to strike, I find that *Wilson*'s notice of supplemental authority did not contain argument; it simply described the holding of a recent case, which it also attached to the notice. Because both notices of supplemental authority simply cited to publicly available cases of which I was entitled to take notice, neither of these notices contained argument or prejudiced *Easy Spirit*. Thus, consistent with this standard, I deny *Easy Spirit*'s motions to strike.

Finally, because I have already considered and rejected *Easy Spirit*'s argument in its Proposed Reply to Plaintiff's Notices **[\*24]** of Supplemental Authority, ECF No. 71, about the legislative history of the 2018 TCPA Amendments, I grant its motion for leave to file that reply.

## V. CONCLUSION

For the foregoing reasons, *Easy Spirit*'s Motion to Dismiss is denied and the pending motions to strike are also denied. *Easy Spirit*'s motion for leave to file a reply to *Wilson*'s notices of supplemental authority is granted.

The court will schedule a status conference to discuss whether *Easy Spirit* still intends to pursue bifurcation of discovery and to set a schedule.

**SO ORDERED**.

New Haven, Connecticut

March 31, 2026

*/s/ Sarah F. Russell*

SARAH F. RUSSELL

United States District Judge